UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - :

MICROSOFT CORPORATION,                        :        13 CV 8275 (PAC) (MHD)
                                              :
               Plaintiff,                 :
                                              :
               v.                         :
                                              :
ACACIA RESEARCH CORPORATION,                  :
                                              :
               Defendant.                 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - :

## ACACIA RESEARCH CORPORATION'S MOTION TO DISMISS MICROSOFT CORPORATION'S COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6)

# <u>TABLE OF CONTENTS</u>

Page

I.    INTRODUCTION ...................................................................................1

II.   SUMMARY OF THE CASE ....................................................................2

      A.    Acacia Is A Publicly-Traded Company That Partners With Leaders
            In Innovative Technologies.............................................................2

      B.    Acacia And Microsoft Entered Into The Contract, Which Granted
            Microsoft A License And Covenant Not To Sue With Respect To
            Certain Patents That Expired On September 30, 2013. .....................4

            1.    Licenses To Any Patents That Acacia Acquired After
                  Execution Of The Contract Expired On September 30, 2013. ...................4

            2.    The Provision Requiring Acacia To Update Its Patents
                  Does Not Require Acacia To State Its Belief As To
                  Whether Microsoft Infringed Those Patents.................................5

            3.    The Indemnity Provision Does Not Include A Duty To Defend. ...............6

            4.    The Forum Selection Clause Is Limited To Actions
                  "Directly Arising" From The Contract. ......................................6

      C.    Seven Acacia Subsidiaries Are Currently Suing Microsoft
            For Infringement Occurring After September 30, 2013. .......................7

III.  LEGAL STANDARD.............................................................................8

IV.   ARGUMENT .......................................................................................9

      A.    Microsoft Fails To State A Claim Under Any Theory. .........................9

            1.    Microsoft's Breach Of Contract Claims Are Contradicted
                  By The Plain Contract Language.................................................9

                  a.    The Contract Permits Acacia To Sue Microsoft For Damages
                        Incurred After September 30, 2013, Which Is All The Acacia
                        Subsidiaries Seek. .........................................................9

                  b.    Microsoft Has Not Pled A Breach Of The Notice
                        Provision, Which Does Not Require Acacia To
                        State Its Belief As To Whether Microsoft Infringes Patents. ........11

                  c.    Microsoft Has Not Pled A Breach Of The Indemnity Provision
                        Because Acacia Did Not Take On A Duty To Defend. .................12

|  |  | d. | Microsoft Fails To Plead Cognizable Damages............................13 |
|--|--|----|------|
|  | 2. | | The Mere Filing Of Lawsuits Cannot Constitute An Abuse Of Process. ..................................................................................14 |
|  | 3. | | Microsoft Fails To State A Claim For Declaratory Relief Because There Is No Actual Controversy Between Acacia and Microsoft. ..................................................................16 |
| B. | | | Microsoft's Claims Must Be Dismissed Because They Are Compulsory Counterclaims In The Subsidiary Actions. .........................................19 |
|  | 1. | | Under Second Circuit Precedent, The Subsidiary Actions Are In Appropriate Fora Because Patent Infringement Claims Do Not Arise Under The Contract's Forum Selection Clause..................19 |
|  | 2. | | Microsoft's Claims Are Compulsory Counterclaims. ..............................21 |
| C. | | | Microsoft Fails to Adequately Allege Alter Ego Liability. ....................................23 |
| V. | CONCLUSION | | ............................................................................................................25 |

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,
  300 U.S. 227 (1937)..........................................................................................19

Alpine View Co. v. Atlas Copco AB,
  205 F.3d 208 (5th Cir. 2000) ........................................................................23, 24

Aronson v. Quick Point Pencil Co.,
  440 U.S. 257 (1979)..........................................................................................16

Artvale, Inc. v. Rugby Fabrics Corp.,
  363 F.2d 1002 (2d Cir. 1966)............................................................................22

Ashcroft v. Iqbal,
  556 U.S. 662 (2009)............................................................................................8

ATSI Commc'ns, Inc. v. Shaar Fund., Ltd.,
  493 F.3d 87 (2d Cir. 2007)..................................................................................8

Baker v. Gold Seal Liquors, Inc.,
  417 U.S. 467(1974)......................................................................................22, 23

Bell Atlantic Corp. v. Twombly,
  550 U.S. 544 (2007)............................................................................................8

Bancroft Life & Cas. v. Lo,
  2013 U.S. Dist. LEXIS 12671 (W.D. Penn. Jan. 30, 2013)................................23

Beam Laser Sys., Inc. v. Cox Commun'ns, Inc.,
  117 F. Supp. 2d 515 (E.D. Va. 2000) ...............................................................18

Benitec Austl., Ltd. v. Nucleonics, Inc.,
  495 F.3d 1340 (Fed. Cir. 2007).........................................................................11

Board of Educ. Farmingdale Classroom v. Teachers Ass'n,
  46 A.D.2d 794 (N.Y. App. Div. 1974) ..........................................................14, 15

Chambers v. Time Warner, Inc.,
  282 F.3d 147 (2d Cir. 2002)................................................................................9

Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co., N.A.,
  2013 U.S. Dist. LEXIS 65882 (S.D.N.Y. May 8, 2013) .....................................20

LITIOC/2088066v1/101022-0099

Cohen v. Loeb Partners Corp.,
    1992 U.S. Dist. LEXIS 4863 (S.D.N.Y. Apr. 13, 1992)......................................................8

Corcovado Music Corp. v. Hollis Music,
    981 F.2d 679 (2d Cir. 1993).........................................................................................21

Coregis Ins. Co. v. Am. Health Found., Inc.,
    241 F.3d 123 (2d Cir. 2001)..........................................................................................20

Cornell Univ. v. Illumina, Inc.,
    2012 U.S. Dist. LEXIS 71877 (D. Del. May 23, 2012).........................................14

Curiano v. Suozzi,
    63 N.Y.2d 113 (N.Y. 1984) .........................................................................................15

Depuy, Inc. v. Zimmer Holdings, Inc.,
    384 F. Supp. 2d 1237 (N.D. Ill. 2005) .....................................................................18

EED Holdings v. Palmer Johnson Acquisition Corp.,
    387 F. Supp. 2d 265, 2004 U.S. Dist. LEXIS 20910 (S.D.N.Y. 2004) ...................24

Flight Safety Int'l, Inc. v. Flight Options, LLC,
    418 F. Supp. 2d 103 (E.D.N.Y. 2005) .....................................................................13

FSP, Inc. v. Societe Generale,
    2003 U.S. Dist. LEXIS 493 (S.D.N.Y. Jan. 14, 2003) ................................12, 18, 19

GMP Tech., LLC v. Zicam, LLC,
    2009 U.S. Dist LEXIS 115523 (N.D. Ill. Dec. 9, 2009) .........................................18

Harris v. Steinem,
    571 F.2d 119 (2d Cir. 1978)........................................................................................23

Heartland Rec. Vehicles, LLC v. Forest River, Inc.,
    2012 U.S. Dist. LEXIS 130690 (N.D. Ind. Sep. 12, 2012).....................................16

IBM v. Liberty Mut. Ins. Co.,
    363 F.3d 137 (2d Cir. 2003).....................................................................................6, 12

In re JetBlue Airways Corp. Privacy Litig.,
    379 F. Supp. 2d 299 (E.D.N.Y. 2005) .....................................................................13

Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,
    62 F.3d 69 (2d Cir. 1995) ............................................................................................9

Kubin v. Miller,
    801 F. Supp. 1101 (S.D.N.Y. 1992)..........................................................................13

LITIOC/2088066v1/101022-0099

Maniolos v. United States,
    741 F. Supp. 2d 555 (S.D.N.Y. 2010)...............................................................8, 9

Merial Ltd v. Intervet, Inc.,
    430 F. Supp. 2d 1357 (N.D. Ga. 2006)..................................................................18

Mikohn Gaming Corp. v. Acres Gaming,
    165 F.3d 891 (Fed. Cir. 1998)..............................................................................16

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
    473 U.S. 614 (1985).............................................................................................20

Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC,
    861 F. Supp. 2d 344 (S.D.N.Y. 2012)...................................................................24

Nat'l Grange Mut. Ins. Co. v. Continental Casualty Ins. Co.,
    650 F. Supp. 1404 (S.D.N.Y. 1986)..................................................................6, 12

New York Guardian Mortg. Corp. v. Cleland,
    473 F. Supp. 409 (S.D.N.Y. 1979)........................................................................19

Newmatic Sound Sys. v. Magnacoustics, Inc.,
    2010 U.S. Dist. LEXIS 40018 (N.D. Cal. Apr. 23, 2010) ......................................17

Nike, Inc. v. Adidas Am., Inc.,
    2006 U.S. Dist. LEXIS 90483 (D. Or. Dec. 14, 2006) ..........................................11

O'Bradovich v. Village of Tuckahoe,
    325 F. Supp. 2d 413 (S.D.N.Y. 2004)..............................................................14, 15

Perry v. Manocherian,
    675 F. Supp. 1417 (S.D.N.Y. 1987)......................................................................15

Phillips v. Audio Active, Ltd.,
    494 F.3d 378 (2d. Cir. 2007)......................................................................20, 21, 22

Pochiro v. Prudential Ins. Co.,
    827 F.2d 1246 (9th Cir. 1987) ..............................................................................22

Prod. Res. Grp. v. Martin Prof'l,
    907 F. Supp. 2d 401 (S.D.N.Y. 2012)...................................................................20

PSI Metals v. Firemen's Insurance Co. of Newark, N.J.,
    839 F.2d 42 (2d Cir. 1988)....................................................................................14

Site Microsurgical Sys., Inc. v. The Cooper Cos., Inc.,
    797 F. Supp. 333 (D. Del. 1992)...........................................................................18

v

Slattery Skanska, Inc. v. Am. Home Assurance Co.,
   67 A.D.3d 1 (N.Y. App. Div. 2009) ...................................................................9

Spectronics Corp. v. H.B. Fuller Co.,
   940 F.2d 631 (Fed. Cir. 1991)........................................................................17

Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.,
   620 F.3d 1305 (Fed. Cir. 2010).....................................................................18

SSP Partners v. Gladstrong Invs. Corp.,
   275 S.W.3d 444 (Tex. 2008).........................................................................23

Texas v. United States,
   523 U.S. 296 (1998)......................................................................................19

Top Victory Electronics v. Hitachi Limited,
   No.C10-01579CRB, 2010 U.S. Dist. LEXIS 125003 (N.D. Cal. Nov. 1, 2010)..............17, 18

United Artists Corp. v. Masterpiece Productions,
   221 F.2d 213 (2d Cir. 1955)..........................................................................22

United States ex rel. Wilkins v. N. Am. Constr. Corp.,
   173 F. Supp. 2d 601 (S.D. Tex. 2001) .....................................................23, 24

Waite v.Schoenbach,
   2010 U.S. Dist. LEXIS 115470 (S.D.N.Y. Oct. 29, 2010) ..................................16

## STATUTES

28 U.S.C. § 2201....................................................................................................16

35 U.S.C § 282......................................................................................................16

35 U.S.C § 285......................................................................................................16

## OTHER AUTHORITIES

Fed. R. Civ. P. Rule 12(b)(6).....................................................................................1

Fed. R. Civ. P. 14..................................................................................................23

## I.    INTRODUCTION

This memorandum is respectfully submitted in support of Defendant Acacia Research Corporation's ("Acacia") Motion to Dismiss Plaintiff Microsoft Corporation's ("Microsoft") complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

After Microsoft rejected an opportunity to extend its term-limited rights under patents owned by subsidiaries of Acacia, those subsidiaries predictably sued Microsoft for continuing to use and infringe the very patents Microsoft refused to license.  Now Microsoft seeks to improperly consolidate seven disparate patent litigations from around the country in this Court.  If that occurs, this Court would be burdened with deciding issues relating to numerous patents from distinct technology portfolios only as they pertain to Microsoft, while other courts would be determining the same issues relating to the same patents with respect to other defendants in those disparate patent litigations.  The result would be tremendous judicial inefficiencies and a serious risk of inconsistent judgments with respect to the very same patents.  In addition to the inefficiencies that weigh against such relief, Microsoft's complaint fails both substantively and procedurally, and represents a clear effort to "forum shop."

As a substantive matter, Microsoft's contract claim fails because it is contradicted by the plain language of the now-expired contract between Microsoft and Acacia.  First, Microsoft appears to allege that the contract "forever immunizes" Microsoft, when the plain terms of the contract provide that Microsoft's rights expired on September 30, 2013.  Second, Microsoft claims that Acacia's subsidiaries seek damages for conduct prior to September 30, 2013, when damages actually are only sought for the time period after September 30, 2013, i.e., after the contract's expiration.  Third, Microsoft complains that Acacia failed to inform Microsoft of Acacia's belief as to whether Microsoft infringed certain patents, but the contract contains no

such obligation.  Fourth, Microsoft asserts that Acacia must pay for its defense in these pending

patent litigations, but the indemnity clause in the contract contains no duty to defend.

Similarly, Microsoft's abuse of process claim fails because the mere filing of lawsuits

cannot constitute an abuse of process.  Microsoft's claim for declaratory relief is not ripe because

indemnity is not yet at issue.  Finally, Microsoft does not allege any actual well-pled facts in

support of its conclusory alter ego allegations.

As a procedural matter, Microsoft's claims are compulsory counterclaims in the pre-

existing patent litigations.  The patent litigations arise under the Patent Act and therefore, under

clear Second Circuit precedent, are not subject to the contract's narrow forum selection clause

that only applies to claims "directly arising between the parties … under this Contract."

(Contract § 4.10.)  Microsoft must assert its claims in those patent litigations, not here.

Acacia therefore respectfully requests that the Court dismiss Microsoft's Complaint.

## II.    SUMMARY OF THE CASE

### A.    Acacia Is A Publicly-Traded Company That Partners With Leaders In Innovative Technologies.

Acacia is a publicly-traded company engaged in the business of acquiring, developing,

licensing, and enforcing patented technologies.  It owns over 200 separate patent portfolios

covering a diverse array of technologies.  Acacia provides individual inventors, universities, and

Fortune 500 companies the expertise and resources to manage, license, and monetize their

inventions, as well as to defend their patents from infringement.  (Req. for Jud. Notice ("RJN"),

Ex. 45 (Acacia Research Corp., Annual Report (Form 10-K) (Feb. 28, 2013)) at pg. 3-8.)

Acacia has helped many inventors across diverse technologies bring their ideas to market.

In fact, Acacia has even provided its patent portfolio management services to Microsoft on other

occasions unrelated to this lawsuit.  In this era of speed-of-light innovation, Acacia is uniquely

equipped to facilitate innovation through the cross-licensing of patents between major players in all industry sectors.  (Id.)

For various business reasons, Acacia conducts business through subsidiaries that hold and manage the patents.  For example, this subsidiary structure:  (1) ensures that the inventor or prior owner of each patent portfolio will receive his/her/its share of any profits; (2) accurately accounts for revenues and expenses attributable to each patent portfolio; (3) protects inventors, individual patent portfolios, and third parties from risks associated with other patent portfolios. Each Subsidiary is responsible for payments to the relevant portfolio's stake holders according to the contracts or licenses by which the patents were acquired.  (Id.)

This is not a novel structure, nor an illegal or otherwise improper structure in any way. Thus, any negative insinuation is a clear effort to detract from the salient legal issues.  Parent-subsidiary corporate structures are widely used by many of the largest corporations in the world. For example, for similar business reasons, Blackstone Group, one of the world's largest private equity firms, places each portfolio company into a separate subsidiary.  (RJN, Ex. 47 (Blackstone Group, LP, Annual Report (Form 10-K), Ex. 21.1 (Mar. 1, 2013) (listing over 400 subsidiaries)).)  Likewise, Siemens places every new power plant into a separate subsidiary. (RJN, Ex. 48 (Siemens Aktiengesellschaft, Annual Report (Form 20-F), Ex. 8.1 (Nov. 27, 2013)).)

Indeed, while Microsoft criticizes Acacia's corporate structure (Compl. ¶ 8), Microsoft subsidiaries store stand-alone business such as Skype, Inc. and GroupMe, Inc.  (See, e.g., Intercarrier Communications LLC v. Microsoft Corp., et al., No. 1:13-cv-1639 (D. Del. Oct. 1, 2013).)  Microsoft also apparently uses an aptly named subsidiary, Microsoft Licensing, GP, to

engage in intellectual property licensing.  (See RJN, Ex. 46 (Microsoft Corp., Annual Report

(Form 10-K), Ex. 21 (June 30, 2013)).)

> **B.**    **Acacia And Microsoft Entered Into The Contract, Which Granted Microsoft A License And Covenant Not To Sue With Respect To Certain Patents That Expired On September 30, 2013.**

On September 30, 2010, Acacia, on behalf of itself and its subsidiaries,[1] entered into the

Amended and Restated Confidential Option Agreement, which includes a Portfolio License and

Covenant-Not-To-Sue-Addendum (collectively, the "Contract"), with Microsoft.[2]  Under the

Contract, Microsoft paid Acacia a substantial sum in exchange for limited rights with respect to

certain patents, many of which, per the Contract, would expire on September 30, 2013.

Microsoft's Complaint does not quote or cite any particular provision in the Contract.  This is

because the Contract's terms demonstrate that Microsoft's claims are meritless.

> **1.**    **Licenses To Any Patents That Acacia Acquired After Execution Of The Contract Expired On September 30, 2013.**

Article A2 in the Contract is the chief provision setting forth how various patents are to

be classified either as licensed patents, covenanted patents, later-acquired licensed patents, later-

acquired covenanted patents, and reclassified patents.  (Contract, Art. A2.)  The central

distinction between classes is the date of termination of rights granted under the Contract.

For "Later-Acquired Patents" (*i.e.* patents acquired after the Contract was signed),[3] the

licenses and covenants run-with-the-contract.  That is, the licenses and covenants expire at the

end of the License Period:  "With respect to Acacia Licensed Patents that are Later-Acquired

Patents, the license in this Section A2.1 shall be paid only through, and terminate at the end of,

---

[1] "Subsidiary" or "Subsidiaries" mean the Acacia subsidiaries asserting patent infringement claims against Microsoft in the pre-existing litigation.
[2] A copy of the Contract is attached as "Exhibit 1" to Microsoft's Complaint.
[3] Article 1, § 1.4 defines "Later-Acquired Patents" as "all classes or types of patents and patent applications . . . (i) that are not owned or controlled by an Acacia Entity as of September 30, 2010 but are owned or controlled by an Acacia Entity at any time after September 30. 2010, or (ii) under which patents, or applications therefore, the Acacia Entities have no right as of September 30, 2010 to grant licenses, covenants or other immunities but the Acacia Entities have the right at any time after September 30, 2010 to grant licenses, covenants or other immunities."

the License Period." (Contract, Art. A2.1.)[4]  As defined in § A1.8, the License Period "shall

mean the period . . . ending on September 30, 2013."  The licenses and covenants to Later-

Acquired Patents thus expired on September 30, 2013.

Related to Article A2, Schedule A contains a list of then-current "Acacia Patents" and

was to be updated for "Later-Acquired Patents."  (Contract, Art. 1.2.)  Schedule A enumerates

the patents existing at the time the Contract was signed.  None of the patents asserted in the

Subsidiary Actions[5] were existing patents, and thus none appear in the schedules.  By the plain

terms of the Contract, because the Subsidiaries' asserted patents were Later-Acquired Patents,

Microsoft's rights under them expired on September 30, 2013.

**2.    The Provision Requiring Acacia To Update Its Patents Does Not Require Acacia To State Its Belief As To Whether Microsoft Infringed Those Patents.**

Article A6, § A6.7, sets forth Acacia's duty to provide "annual updates" to Microsoft:

"At least thirty (30) days prior to each anniversary of the Option Exercise Date, [Acacia] shall

send Microsoft a list of any additional patents beyond those identified in Schedule A that meet

the definition of Acacia Patents. . . ."  The "annual update" is a clerical task.  Acacia was simply

required to provide Microsoft with a list.  On that list, Acacia only was required to enumerate the

patents, if any, that it acquired after the date the Contract was signed.

Contrary to Microsoft's allegations, Acacia was not required to state its "belief" as to

whether Microsoft was infringing these Later-Acquired Patents.  (See Compl. ¶¶ 13, 32, 33.)

Indeed, neither the word "belief" nor any similar concept appears anywhere in the Contract.

---

[4] Similarly, "[w]ith respect to Acacia Covenanted Patents that are Later-Acquired Patents, the covenants in this Section A2.2 shall continue and remain continuously in effect for all such Sales that occur prior to the end of the License Period."
[5] "Subsidiary Actions" refers collectively to the pre-existing patent infringement litigation involving the Subsidiaries.

### 3. The Indemnity Provision Does Not Include A Duty To Defend.

Microsoft's Complaint also puts the indemnification provision at issue. Article A6, § A6.1 provides: "Acacia agrees to indemnify . . . the Microsoft Entities . . . against any claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys' fees, liabilities or indemnities arising out of or in connection with any assertion of the Acacia Patents that is inconsistent with the licenses, covenants and releases granted hereunder."

Thus, before Microsoft's right to indemnity accrues, § A6.1 provides that Acacia Patents must have been asserted against Microsoft in a manner inconsistent with the Contract. Mere allegations do not give rise to an indemnity obligation. Indeed, the phrase "duty to defend" appears nowhere in this provision. Put otherwise, the duty is one of indemnification, not litigation insurance.[6]

### 4. The Forum Selection Clause Is Limited To Actions "Directly Arising" From The Contract.

The Contract provides that Microsoft may have liability for patents acquired by Acacia after September 30, 2010, including for patents that already would be in the litigation process against other defendants in disparate locations by the time the Contract expired. (Contract, Art. A2, § 2.1 (licenses to Later-Acquired Patents expires on September 30, 2013).) The parties could have expressly stated that "patent infringement actions" must be filed in New York. Or the parties could have used the broad "arising out of or in connection with" language that they used in the indemnity provision. (Contract, Art. A6, § 6.1.) But the parties did neither. (Contract, Art. 4, § 4.10.)

---

[6] New York law is "crystal clear that [a] duty to defend is separate and distinct from [a] duty to indemnify," <u>National Grange Mut. Ins. Co. v. Continental Casualty Ins. Co.</u>, 650 F. Supp. 1404, 1407 (S.D.N.Y. 1986), and a duty to defend only exists if the "wording" in the contract is "clear and unambiguous" that a "duty to defend" was bargained for. <u>IBM v. Liberty Mut. Ins. Co.</u>, 363 F.3d 137, 144 (2d Cir. 2003).

Instead, the forum selection clause in the Contract is limited. Article 4, § 4.10 of the Amended and Restated Confidential Option Agreement provides: "With respect to all civil actions or other legal or equitable proceedings <u>directly arising</u> between the parties or any of their Affiliates <u>under this Option Agreement</u>, the Parties consent to exclusive jurisdiction and venue in the . . . Southern District of New York." (emphasis added).

### C.    Seven Acacia Subsidiaries Are Currently Suing Microsoft For Infringement Occurring After September 30, 2013.

Microsoft is currently infringing at least 18 patents owned by Acacia Subsidiaries. (<u>See</u> Compl. ¶ 16.) The eighteen patents are owned and asserted by seven separate entities.[7] To illustrate the distinct technology areas of the 18 patents, the Court need only look to the Subsidiaries' patent infringement actions. (RJN, Exs. 1-22.) For example, <u>Innovative Display Technologies LLC v. Microsoft Corp.</u>, No. 2:13-cv-783 (E.D. Tex. Dec. 9, 2013) involves seven different patents pertaining to "Light Emitting Panel Assemblies" which are used in products such as Microsoft's Surface RT. (RJN, Ex. 9.) In marked distinction, <u>Intercarrier Comm. LLC v. Microsoft Corp., et al.</u>, No. 1:13-cv-1639 (D. Del. Oct. 1, 2013) involves a single patent pertaining to "Inter-carrier Messaging Service Providing Phone Number Only Experience" which is used in Microsoft's GroupMe messaging service. (RJN, Ex. 11.)

When Microsoft refused to renew the Contract and it expired, twelve of the patents already were in litigation in four separate courts against more than a dozen defendants. For example, <u>Innovative Display Technologies LLC v. Acer, Inc. et al.</u>, was filed on June 28, 2013 against Acer, Inc., Dell, Inc., Hewlett-Packard Co., Huawei Investment & Holding Co., Ltd.,

---

[7] Cellular Communications Equipment – U.S. Patent No. 7,218,923; Computer Software Protection LLC – U.S. Patent No. 6,460,140; Data Engine Technologies LLC – U.S. Patent Nos. 6,314,558; 6,643,842; and 7,240,335; Innovative Display Technologies LLC – U.S. Patent Nos. 6,755,547; 7,300,194; 7,384,177; 7,404,660; 7,434,974; 7,537,730; and 8,215,816; Intercarrier Communications LLC – U.S. Patent No. 6,985,748; Optimum Content Protection LLC – U.S. Patent No. 7,502,470; and Video Streaming Solutions LLC – U.S. Patent Nos. 6,629,318; 6,870,886; 6,806,909; and 6,175,595.

BlackBerry, Ltd., and others.  Microsoft was joined in this action on December 19, 2013

pursuant to the court's order consolidating the related cases for all pretrial issues.  (RJN, Ex. 29.)

In short, the Subsidiary Actions cannot be joined together for resolution because they all

involve different and unrelated patent portfolios.  Indeed, that is one reason the forum selection

clause plainly does not cover infringement actions:  If Microsoft could litigate patent claims

against it in different fora than the other defendants on that same patent, the result would be

multiple courts inefficiently deciding the same issues with a substantial risk of inconsistent

judgments.

### III.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Pleading facts that are "merely consistent with" liability is insufficient.  Id.  Similarly, mere

"labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not

do."  Id. (quoting Twombly, 550 U.S. at 555)).  Nor will "naked assertions devoid of further

factual enhancement" suffice.  Id. (quoting  Twombly, 550 U.S. at 557).  Rather, the plaintiff

must state facts "showing that [it] is entitled to relief."  Id.

In considering a motion to dismiss, a court generally accepts all well-pleaded factual

allegations as true.  Id.  However, a court may also "consider documents attached to the

complaint as an exhibit or incorporated in the complaint by reference."  Maniolos v. United

States, 741 F. Supp. 2d 555, 560 (S.D.N.Y. 2010) (citing ATSI Commc'ns, Inc. v. Shaar Fund.,

Ltd., 493 F.3d 87, 98 (2d Cir. 2007)).   A court may also consider "matters of which judicial

notice may be taken."  Id. at 153 (citation omitted).

8

Here, Microsoft relies on the terms in various documents, including the Contract and the pleadings in the Subsidiary Actions. Accordingly, this Court may consider these documents. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (citing Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)).

## IV.    ARGUMENT

### A.    Microsoft Fails To State A Claim Under Any Theory.

#### 1.    Microsoft's Breach Of Contract Claims Are Contradicted By The Plain Contract Language.

By the plain terms of the Contract, Microsoft's Complaint fails to state a claim. "Clear contractual language does not become ambiguous simply because the parties to the litigation argue different interpretations." Maniolos, 741 F. Supp. 2d 555, 569 (S.D.N.Y. 2010) (citing Bethlehem Stell Co. v. Turner Constr. Co., 2 N.Y.2d 456, 460 (1957); Slattery Skanska, Inc. v. Am. Home Assurance Co., 67 A.D.3d 1, 14 (N.Y. App. Div. 2009)).

#### a.    The Contract Permits Acacia To Sue Microsoft For Damages Incurred After September 30, 2013, Which Is All The Acacia Subsidiaries Seek.

Microsoft's Complaint is less than clear, but it appears to assert that Microsoft is "forever immunize[d]" from suits relating to Later-Acquired Patents. (Compl. ¶ 12.) That is not what the Contract provides. Microsoft's rights relating to Later-Acquired Patents unequivocally expired upon termination of the Contract on September 30, 2013. (Contract, Art. 2, §§ 2.1, 2.2.) Specifically, § 2.1 provides: "With respect to Acacia Licensed Patents that are Later-Acquired Patents, the license in this Section A2.1 shall be paid only through, and terminate at the end of, the License Period." (emphasis added). The License Period ended on September 30, 2013. (Contract, Article A1, § A1.8.)

Because Microsoft refused to extend the Contract and its right to use Later-Acquired Patents expired on September 30, 2013, Microsoft's continued use of Later-Acquired Patents

9

after that date could result in infringement and litigation. All of the Subsidiary Action patents are Later-Acquired Patents. Attached to the Contract is a schedule that lists those patents which were Existing Patents on the commencement date. (Contract, Schedule A.) The patents asserted in the Subsidiary Action are not among those listed. (Section II.B.1, supra.)

In an attempt to create a breach of Contract where none exists, Microsoft sets up a strawman by alleging that the Subsidiary Actions seek damages for infringement prior to September 30, 2013. (Compl. ¶¶ 16-24.) However, the Subsidiary Actions only seek relief for present and ongoing infringement. This is evident from the face of the Subsidiary Complaints.

For example, the complaint in Cellular Commc'ns Equip. LLC v. Microsoft Corp., No. 6:13-cv-738 (E.D. Tex.) (filed Oct. 1, 2013) prays for relief in the form of: "a. Judgment that one or more claims of the '8923 patent have been infringed . . . ; b. Judgment that Microsoft account for and pay to CCE all damages to and costs incurred by CCE because of Microsoft's infringing activities and other conduct complained of herein; c. Judgment that Microsoft account for and pay to CCE a reasonable, ongoing, post-judgment royalty because of Microsoft's infringing activities and other conduct complained of herein; d. That CCE be granted pre-judgment and post-judgment interest . . . ; and e. That CCE be granted such other and further relief as the Court may deem just and proper under the circumstances." (RJN Ex. 2.) The other Subsidiary Complaints ask for substantially identical relief. (E.g., RJN Exs. 5, 9, 11, 14, 19, 21.) Nowhere in this prayer for relief does the Subsidiary ask for damages for infringement that pre-dates September 30, 2013.

To the extent this prayer somehow is unclear, the Subsidiaries have each removed any possible ambiguity by amendment of the complaint or judicial admission. For example, the second amended complaint in Video Streaming Solutions LLC v. Microsoft Corp., No. 1:13-cv-

10

7031 (N.D. Ill.) (filed Dec. 5, 2013) expressly clarifies in its prayer for relief that Video

Streaming is only seeking "judgment that Defendant accounts for and pays to Video Streaming

all damages to and costs incurred by Video Streaming after October 1, 2013 because of

Defendant's infringing activities and other conduct complained of herein."  (RJN Ex. 19.)

     The amendments to the Subsidiary Complaints render moot Microsoft's allegation that

the Subsidiaries are seeking historical damages.  Nike, Inc. v. Adidas Am., Inc., 2006 U.S. Dist.

LEXIS 90483, at *11-18 (D. Or. Dec. 14, 2006) is instructive.  Nike sued for a declaratory

judgment to prevent Adidas from suing for infringement of the two-striped shoe emblem.  Id. at

16.  However, Adidas had entered into a stipulation not to sue for past trademark infringement.

Id. at 2-3.  The court therefore dismissed the complaint because the stipulation was sufficient to

moot the controversy.  Id. at 16-18; see also Benitec Austl., Ltd. v. Nucleonics, Inc., 495 F.3d

1340, 1347-48 (Fed. Cir. 2007) (finding no controversy where party entered into a covenant not

to sue on the claim alleged).

     As in Nike, to remove any possible confusion, the Subsidiaries have made judicial

admissions and stipulated to only seek damages incurred after October 1, 2013.  Those

admissions make Microsoft's claims moot.  Microsoft's breach of contract claim therefore fails.

### b. Microsoft Has Not Pled A Breach Of The Notice Provision, Which Does Not Require Acacia To State Its Belief As To Whether Microsoft Infringes Patents.

     Microsoft wrongly alleges that Acacia breached the Contract by not providing annual

updates containing its belief as to whether Microsoft was infringing the patents.  Microsoft fails,

however, to identify any contractual language that would support such an argument.

     The Contract actually provides that Acacia is to send Microsoft "a list of any additional

patents beyond those identified in Schedule A that meet the definition of Acacia Patents."

(Contract, Article A6, § A6.7.)  The Contract defines "Acacia Patents" as merely "all Existing Patents and Later-Acquired Patents."  (Contract, Art. 1.2.)

These provisions simply do not require Acacia to state its "belief," "concerns" or "suspicions" vis-à-vis infringement by Microsoft.  Indeed, neither the word "belief" nor any similar language appears anywhere in this provision or, for that matter, anywhere in the Contract. The Contract only requires Acacia to provide Microsoft with a list of Later-Acquired Patents, nothing more.

> **c.    Microsoft Has Not Pled A Breach Of The Indemnity Provision Because Acacia Did Not Take On A Duty To Defend.**

Microsoft also alleges that Acacia breached the indemnity provision.  However, because the Subsidiary Actions have not been adjudicated, there is nothing to indemnify.  The indemnity provision is not litigation insurance, and it is not a duty to defend.

In IBM v. Liberty Mut. Ins. Co., 363 F.3d 137, 144 (2d Cir. 2003), the court explained this distinction.  A "duty to defend is broader than the duty to indemnify" in that it requires the indemnitor to provide a defense before any liability is found, whereas an indemnity obligation only requires the indemnitor to reimburse the indemnitee after liability is found.  Id.  A duty to defend only exists if the "wording" in the contract is "clear and unambiguous" that a "duty to defend" was bargained for.  Id.; see also National Grange Mut. Ins. Co. v. Continental Casualty Ins. Co., 650 F. Supp. 1404, 1407 (S.D.N.Y. 1986) (New York law is "crystal clear that [a] duty to defend is separate and distinct from [a] duty to indemnity")

Here, the Contract's indemnity provision does not contain a duty to defend.  Therefore, Acacia is not required to provide Microsoft with a defense merely because it has been sued. Instead, Acacia's indemnity obligations only will arise if and when the court finds that an Acacia subsidiary sued Microsoft in violation of the Contract.  This claim simply is not ripe.  See FSP,

Inc. v. Societe Generale, 2003 U.S. Dist. LEXIS 493, *12-13 (S.D.N.Y. Jan. 14, 2003) (indemnity claim not ripe until liability is determined).

**d.     Microsoft Fails To Plead Cognizable Damages.**

Microsoft's contract claim also must be dismissed because Microsoft fails to plead damages. Damages are an essential element to a breach of contract claim in New York.

For example, in Flight Safety, the plaintiff sought lost profits as a result of a breach of contract. Flight Safety Int'l, Inc. v. Flight Options, LLC, 418 F. Supp. 2d 103, 108 (E.D.N.Y. 2005), aff'd in part, vacated in part on different grounds 194 Fed. Appx. 53 (2d Cir. 2006). The court dismissed plaintiff's breach of contract claim because lost profit damages were precluded by the unambiguous language of the contract. Id. See, e.g., In re JetBlue Airways Corp. Privacy Litig., 379 F. Supp. 2d 299, 326-27 (E.D.N.Y. 2005) (failure to plead cognizable damages fatal to breach of contract claim) (citation omitted); Kubin v. Miller, 801 F. Supp. 1101, 1121-22 (S.D.N.Y. 1992) (dismissing breach of contract action for failure to plead damages because asserted damages were not cognizable under New York law).

Like in Flight Safety, Microsoft's alleged damages here are precluded by the Contract. Even accepting as true Microsoft's incorrect allegation that the Subsidiaries initially sought past damages, Microsoft still would have no damages. Microsoft had to respond to allegations of future and present damages in the Subsidiary Actions, whether or not there were also allegations of past damages. Thus, there can be no cognizable damage arising from Microsoft having responded to the supposed past damage allegation for a brief period before the Subsidiaries filed their amended complaints or otherwise clarified they were not seeking damages for conduct prior to September 30, 2013.

Moreover, a breach of a covenant not to sue does not even give rise to damages that would support a contract claim. Instead, the covenant not to sue is an affirmative defense to the

13

improper lawsuit.  See Cornell Univ. v. Illumina, Inc., 2012 U.S. Dist. LEXIS 71877, *17 & n.62

(D. Del. May 23, 2012) (where one party breaches a covenant not to sue, the other party receives

the benefit-of-the-bargain by asserting the covenant not to sue as an affirmative defense; there is

no independent harm to support a claim for relief) (citing, inter alia, Artvale, Inc. v. Rugby

Fabrics Corp., 363 F.2d 1002, 1008 (2d Cir. 1966) (the primary function of a covenant not to sue

is to serve as a "shield" rather than a "sword," and absent a specific contractual provision to the

contrary, litigation expenses are not recoverable as damages)).

> **2.    The Mere Filing Of Lawsuits Cannot Constitute An Abuse Of Process.**

The tort of abuse of process is "not for the wrongful bringing of an action or prosecution,

but for the improper use, or rather 'abuse,' of process in connection therewith . . . ."  Board of

Educ. Farmingdale Classroom v. Teachers Ass'n, 46 A.D.2d 794, 796-97 (N.Y. App. Div. 1974);

O'Bradovich v. Village of Tuckahoe, 325 F. Supp. 2d 413, 434 (S.D.N.Y. 2004) ("The institution

of a civil action by summons and complaint, a process necessary to obtain jurisdiction and begin

a lawsuit, is not a sufficient basis for meeting the first element" of abuse of process.) (citation

omitted).

An abuse of process claim therefore must fail, unless the plaintiff pleads a collateral

purpose that is improper.  For example, in O'Bradovich, defendant sued plaintiff for defamation.

325 F. Supp. 2d at 420.  After achieving a successful result in the defamation lawsuit, the

plaintiff sued defendant for abuse of process.  Id.  The court dismissed the plaintiff's abuse of

process claim because the only allegation was the initiation of the defamation lawsuit.  Id. at

434.  The court remarked that "[n]umerous other courts have also held that the mere issuing of

process cannot give rise to an abuse of process claim, since the unlawful pursuit of a collateral

objective must occur after the process is issued."  Id. (citing PSI Metals v. Firemen's Insurance

Co. of Newark, N.J., 839 F.2d 42 (2d Cir. 1988) (finding no abuse of process where the defendant merely filed a counterclaim with the intent that the plaintiff expend money in defending the claim).[8]

Here, like in O'Bradovich, Microsoft's claim fails because Microsoft has not alleged any wrongful collateral purpose. Microsoft alleges only two facts in support of this claim, neither of which demonstrates a collateral purpose that can support an abuse of process claim.

First, Microsoft complains that seven separate actions were filed. (Compl. ¶ 45.) But just a cursory review of the patent suits themselves demonstrates that there are seven separate suits because there are seven separate and unrelated sets of patents that impact multiple different defendants. (E.g., Docket, Cellular Commc'ns Equip. LLC v. Microsoft Corp., No. 6:13-cv-738 (E.D. Tex.) (nine related lawsuits asserting patent infringement against various defendants);[9] Docket, Innovative Display Technologies LLC v. Microsoft Corp., No. 2:13-cv-783 (E.D. Tex.) (seven different patents in issue)).[10] More importantly, each Subsidiary, as a patent holder, has the right to use legal process to enforce the exclusivity granted to it by the Patent Act. Under New York law, the mere filing of patent litigation, even seven of them, cannot state an abuse of process claim without a wrongful purpose that is independent of the filing of the actions themselves. Farmingdale Classroom, 46 A.D.2d at 796-97 ("It is not enough that the actor ha[s] an ulterior motive in using the process of the court. It must further appear that [it] did something in the use of the process outside of the purpose for which it was intended.").

---

[8] See, e.g., Perry v. Manocherian, 675 F. Supp. 1417, 1429 (S.D.N.Y. 1987) (holding that issuance of a summons and complaint, even if made with the intent to coerce settlement and create bad publicity for the defendant, does not constitute abuse of process); Curiano v. Suozzi, 63 N.Y.2d 113, 117 (N.Y. 1984) (holding that malicious motive in issuing a summons does not establish abuse of process)).
[9] (RJN Exs. 36-44.)
[10] (RJN. Exs. 28-35.)

Second, Microsoft alleges that the Subsidiary Actions are "baseless." (Compl. ¶ 42.) However, whether the Subsidiary Actions are baseless is not a determination for this Court to make.  That determination is reserved for the courts in which the Subsidiary Actions were filed.  Those are the courts which are most familiar with the plethora of facts and legal issues related to each of those cases. Not only would it be legally improper and otherwise inappropriate for this Court to make determinations about the bona fides of the cases pending before other federal judges, but it would require a significant amount of duplicative factual and legal analysis of issues that are being considered by those other courts.  Indeed, if the Subsidiary Actions are "baseless," the Patent Act provides remedies for frivolous suits.  35 U.S.C §§ 282, 285 (a "court in exceptional cases may award reasonable attorney fees to the prevailing party").

In a substantially similar case, Heartland Rec. Vehicles, LLC v. Forest River, Inc., 2012 U.S. Dist. LEXIS 130690 (N.D. Ind. Sep. 12, 2012), the plaintiff filed a patent infringement suit and the defendant responded with an abuse of process counterclaim.  Id. at *29-30.  The court dismissed the abuse of process claim because "to hold that an abuse of process claims lies in a patent holder's filing of a lawsuit for monetary and injunctive relief to halt suspected infringing activity of a presumptively valid patent . . . would inappropriately curtail the rights of patent holders and Congress' intent to promote the progress of science and useful arts." Id. (citing Aronson v. Quick Point Pencil Co., 440 U.S. 257, 262 (1979)).[11]

### 3.    Microsoft Fails To State A Claim For Declaratory Relief Because There Is No Actual Controversy Between Acacia and Microsoft.

Declaratory relief is available only "[i]n a case of actual controversy . . . ."  28 U.S.C. § 2201.  The party seeking a declaratory judgment has the burden of establishing an actual case or

---

[11] See also Mikohn Gaming Corp. v. Acres Gaming, 165 F.3d 891, 896 (Fed. Cir. 1998) (vacating injunction where sole claim against patent holder was that the patent holder engaged in an abuse of process by threatening a patent infringement action against plaintiff because an "allegation of inequitable conduct in obtaining a patent is not remediable by state action for abuse of process").

controversy.  See, e.g., Spectronics Corp. v. H.B. Fuller Co., 940 F.2d 631, 634 (Fed. Cir. 1991)

("The long established rule of law is that a declaratory judgment plaintiff must establish an

actual controversy. . . .").  Here, Microsoft seeks two type of declaratory relief, but neither

creates an actual controversy between Microsoft and Acacia.

 First, Microsoft seeks a declaration that it cannot be sued on the patents.  However, it is

well-established that a parent is not a proper defendant in a declaratory judgment action for

patent non-infringement when its subsidiary owns the patent in dispute.

 For example, Top Victory Electronics v. Hitachi Limited, No.C10-01579CRB, 2010 U.S.

Dist. LEXIS 125003, at *6-10 (N.D. Cal. Nov. 1, 2010), is directly on point.  There, Hitachi, Ltd.

once owned patents that it assigned to two of its subsidiaries.  When the plaintiffs brought a

declaratory relief action seeking a non-infringement determination against Hitachi, Hitachi

moved to dismiss for lack of subject matter jurisdiction.  Id. at *1.  The court explained that

because only a party with legal title to a patent, i.e., the owner or exclusive licensee, has standing

to bring an infringement suit, only such a party is a proper defendant for a non-infringement

declaratory relief action.  Id. at *7-9.  The court then dismissed the case against Hitachi because

Hitachi had assigned all rights to its subsidiaries.  Id. at *9-10.  The court rejected plaintiffs'

argument that Hitachi held equitable title to the patents through the parent-subsidiary

relationship, stating: "That a corporate parent's subsidiary owns a patent is not enough to

establish that the parent has rights in the subsidiary's patents."  Id. at * 11 (citation omitted).

See, e.g., Newmatic Sound Sys. v. Magnacoustics, Inc., No. C 10-00129 JSW, 2010 U.S. Dist.

LEXIS 40018, at *4-10 (N.D. Cal. Apr. 23, 2010) (dismissing declaratory relief against parent

company, where the parent company did not own or have an exclusive license for the patents);

<u>GMP Tech., LLC v. Zicam, LLC</u>, No. 08-C-7077, 2009 U.S. Dist LEXIS 115523, at 5-6 (N.D. Ill. Dec. 9, 2009) (same).[12]

Here, like in <u>Top Victory</u>, Acacia is not the owner of the patents in suit in the Subsidiary Actions. Acacia therefore could not have affirmatively sued for infringement. Accordingly, like in <u>Top Victory</u>, Acacia is a not proper party for declaratory relief in this action; the only possible proper parties are the Subsidiaries.

Second, Microsoft seeks a declaration that it is entitled to indemnity. As explained in Section IV.A.1.c above, Acacia cannot owe any current obligation to Microsoft because the Indemnity Provision does not include a duty to defend. Acacia only will have an indemnity obligation to Microsoft if and when a court determines that the Subsidiary Actions were filed in violation of the Contract. Therefore, there is no current controversy.

In <u>FSP</u>, a substantially similar case, the plaintiff sought a declaration that the defendant had a duty to indemnify it for liabilities it might incur in ongoing and future litigation. <u>FSP, Inc.</u>, 2003 U.S. Dist. LEXIS 493, at *12-13. The court dismissed the claim for declaratory relief, holding that there was no current controversy because "[c]laims concerning indemnification obligations [] are not ripe for adjudication until liability has been imposed upon the party to be indemnified." <u>Id.</u> at 13 (citing <u>Cohen v. Loeb Partners Corp.</u>, 1992 U.S. Dist. LEXIS 4863

---

[12] <u>See</u> <u>also</u> <u>Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.</u>, 620 F.3d 1305, 1317-19 (Fed. Cir. 2010) (holding that parent and sister companies of actual patent owner lacked standing to sue for infringement); <u>Merial Ltd v. Intervet, Inc.</u>, 430 F. Supp. 2d 1357, 1361-63 (N.D. Ga. 2006) (granting motion to dismiss parent corporation's infringement suit; finding that "standing under the Patent Act cannot be based on the mere fact that Merial SAS is a wholly-owned subsidiary of Merial"); <u>Depuy, Inc. v. Zimmer Holdings, Inc.</u>, 384 F. Supp. 2d 1237, 1239-41 (N.D. Ill. 2005) (granting motion to dismiss parent corporation's infringement suit; finding that "[f]or this is the garden-variety case ... in which suit is brought by an entity that does not own the property right that it is suing to enforce."); <u>Beam Laser Sys., Inc. v. Cox Commun'ns, Inc.</u>, 117 F. Supp. 2d 515, 520-21 (E.D. Va. 2000) (granting motion to dismiss sole shareholder's infringement suit; finding that "[o]wnership of corporate stock does not create equitable title in that corporation's property."); <u>Site Microsurgical Sys., Inc. v. The Cooper Cos., Inc.</u>, 797 F. Supp. 333, 337-39 (D. Del. 1992) (denying motion for leave to join parent corporation in infringement suit; finding that "Site [subsidiary] holds legal title to the patents and it is a separate, operational corporation. Iolab [parent] cannot be deemed to 'effectively control the patent' merely because it owns and exercises control over its subsidiary." (internal citations omitted)).

(S.D.N.Y. Apr. 13, 1992); New York Guardian Mortg. Corp. v. Cleland, 473 F. Supp. 409, 418

(S.D.N.Y. 1979)).  Until then, indemnification claims are only "hypothetical and abstract."  Id.

(citing Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240-41 (1937); Texas v.

United States, 523 U.S. 296, 300 (1998)).  Like in FSP, Microsoft's right to indemnification is

not ripe because there has been no determination of liability in the Subsidiary Actions.

     For the foregoing reasons, Microsoft's claim for declaratory relief should be dismissed.

    **B.**    **Microsoft's Claims Must Be Dismissed Because They Are Compulsory Counterclaims In The Subsidiary Actions.**

          **1.**    **Under Second Circuit Precedent, The Subsidiary Actions Are In Appropriate Fora Because Patent Infringement Claims Do Not Arise Under The Contract's Forum Selection Clause.**

     The Subsidiary Actions are patent infringement actions, and Microsoft is not the only

defendant.  (See Section II.C, supra.)  Some of those cases even have already begun the claim

construction stage of litigation.  E.g., Computer Software Protection LLC v. Nuance Commc'ns,

Inc., No. 1:12-CV-454 (D. Del. 2013), Dkt. No. 61 (Claim Construction Chart filed).  (RJN Ex.

26.)  Application of the forum selection clause to the infringement cases against Microsoft would

result in separating related patent cases only to risk multiple courts reaching contradictory

decisions on issues such as the scope and validity of the same patents.

     The forum selection clause is narrow to avoid this exact result:  "With respect to all civil

actions or other legal or equitable proceedings directly arising between the parties or any of their

Affiliates under this Option Agreement, the Parties consent to exclusive jurisdiction and venue in

the United States District Court for the Southern District of New York. . . ."  (Contract, Art. 4, §

4.10. (emphasis added).)  The forum selection clause therefore only applies to contract-based

claims, not to patent-based claims. See Phillips v. Audio Active, Ltd., 494 F.3d 378 (2d. Cir. 2007). [13]

Acacia and Microsoft knew how to use broader language when that was their intention. For example, the indemnity clause in § A6.1 contains broader "arising under or in connection with" language. See Phillips, 494 F.3d at 389 (comparing narrow and broad forum selection clauses); Prod. Res. Grp. v. Martin Prof'l, 907 F. Supp. 2d 401 (S.D.N.Y. 2012) (same). To interpret the forum selection and indemnity provisions as the same would create an "internal inconsistency" in the meaning the parties ascribed to the words. See Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co., N.A., 2013 U.S. Dist. LEXIS 65882, *36 (S.D.N.Y. May 8, 2013) ("The entire contract must be considered, and all parts of it reconciled, if possible, in order to avoid an inconsistency.").

Phillips is directly on point and is therefore controlling.[14] In Phillips, the plaintiff asserted claims for infringement under the Copyright Act. Id. The defendants raised defenses based on provisions of a recording contract that the parties had entered into, and moved to dismiss on the basis that the forum selection clause in the recording contract required litigation to be commenced in another forum. Id. The court held that the forum selection clause in the recording contract, which "was relevant only as a defense, was without effect." Phillips, 494 F.3d at 391. Central to the court's holding was that the copyright claims did not originate from

---

[13] In a detailed analysis, the Phillips court explained the meaning of the phrase "arise out of" in connection with a forum selection clause. Id. at 389-90. It observed that by definition, to "arise out of" something "generally indicates a causal connection." Id. at 389 (citing Coregis Ins. Co. v. Am. Health Found., Inc., 241 F.3d 123, 128 (2d Cir. 2001)). The implication of that narrow construction is that "the words 'arise out of' [do not] encompass[] all claims that have some possible relationship with the contract, including claims that may only 'relate to,' be 'associated with,' or 'arise in connection with' the contract." Id. at 389 (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 644 (1985)). Thus, instead of granting a broad interpretation to the phrase "arise out of" the Second Circuit adopted a "language-specific" approach, and presumed that in using the phrase "arise out of" the parties intended the meaning given by the "dictionary definition of the term: to originate from a specified source." Id. at 390; see also Prod. Res. Grp., 907 F. Supp. 2d 401.

[14] Microsoft attempts to distinguish this case in its pre-motion conference letter on the ground that the designated forum in Phillips was England. This is a non sequitur. There, like here, the sole question was contract interpretation. It was not a case of forum non conveniens.

rights granted in the contract, but rather on rights originating in the Copyright Act. The court reasoned that the plaintiff's "claims [did] not arise out of the contract because [the plaintiff] has asserted no rights or duties under that contract." Id. This same reasoning has been applied repeatedly in the Second Circuit. See, e.g., Corcovado Music Corp. v. Hollis Music, 981 F.2d 679, 682 (2d Cir. 1993) (holding forum selection clause did not apply because it was only relevant to a defense).

Here too, the Subsidiaries' patent claims do not "directly aris[e] . . . under th[e] Option Agreement." (Contract, Art. 4, § 4.10.) Rather, the Subsidiaries' patent claims arise under the Patent Act. The forum selection clause is therefore inapplicable to the Subsidiary Actions. Microsoft is only alleging the Contract in defense of or as counterclaims to the patent infringement claims. Thus, like in Phillips, Microsoft's assertion of those defenses and claims are "without effect" on the Subsidiaries' choices of fora. Phillips, 494 F.3d at 391 (citing Corcovado, 981 F.2d at 681-83).

In sum, controlling Second Circuit precedent dictates the forum selection clause does not apply to the Subsidiary Complaints.[15]

### 2.    Microsoft's Claims Are Compulsory Counterclaims.

Microsoft's claims relate to the assertions of patent infringement in the Subsidiary Actions. Indeed, the crux of Microsoft's Complaint is that it has been harmed by the Subsidiary Actions because it was granted a license to use the patents at issue.

Whether the patents are or are not covered by the Contract is a question that should be resolved by the courts wherein the Subsidiary Actions were filed. For example, in Mopex, Inc.

---

[15] Microsoft attempts to color Acacia's position as refusing to be sued in any forum. This is not Acacia's position. Rather, Acacia's position is two-fold: (1) Acacia is not a necessary party to Microsoft's counterclaims because Microsoft can obtain all the relief it seeks from the Subsidiaries, and (2) other procedures exist for joining potential indemnitors. Microsoft additionally omits the critical fact that Acacia has not been served in the Subsidiary Actions.

v. AMEX, LLC, like in this action, there were two lawsuits: a first filed patent suit and a later-filed defensive lawsuit.  2002 U.S. Dist. LEXIS 3532, at *21-23 (S.D.N.Y. 2002).  The court concluded that because the claims in the later filed contract and tort action were logically related to the claims in the first action, they were compulsory counterclaims.  Id.  The court granted the motion to dismiss.  Id. at *18 (citing Baker v. Gold Seal Liquors, Inc., 417 U.S. 467, 469 n. 1 (1974)).

Microsoft apparently concedes that it is infringing the Subsidiaries' patents but denies liability based on the existence of a license.  That is the very definition of an affirmative defense, which must be raised in the action to which it is a defense.  Artvale, 363 F.2d at 1008 (holding a covenant-not-to-sue is a shield, not a sword).  The language of the Contract further confirms that Microsoft's covenant not to sue must be raised as an affirmative defense.  (Contract, Art. A2, § A.2.8 ("This License and Covenant Addendum may be pleaded as a full and complete defense . . . .").)

For similar reasons, Microsoft's claim for abuse of process is also a compulsory counterclaim.  See, e.g., Pochiro v. Prudential Ins. Co., 827 F.2d 1246, 1253 (9th Cir. 1987) (holding abuse of process claims were compulsory counterclaims in copyright infringement action) (citing with approval United Artists Corp. v. Masterpiece Productions, 221 F.2d 213, 214 (2d Cir. 1955) (claims in the nature of abuse of process are compulsory counterclaims in copyright infringement action)).

Microsoft's claims are compulsory counterclaims and therefore must be brought in the Subsidiary Actions.  Microsoft suggests that because the Contract contains a forum selection clause, it has no choice but to bring its claims in New York.  However, compulsory counterclaims may always be asserted in the forum where the action making them compulsory is

pending.  See Baker, 417 U.S. at 469 n. 1 (stating the general rule that a court has jurisdiction

over compulsory counterclaims); Harris v. Steinem, 571 F.2d 119, 121 (2d Cir. 1978); Bancroft

Life & Cas. v. Lo, 2013 U.S. Dist. LEXIS 12671, * 11-14 (W.D. Penn. Jan. 30, 2013).

Thus, Microsoft's claims must each be asserted in the Subsidiary Actions.[16]

### C.    Microsoft Fails to Adequately Allege Alter Ego Liability.

Microsoft alleges "on information and belief" only that Acacia "has such control over the

[] Subsidiaries that each [] Subsidiary is an alter ego of Acacia," (Compl. ¶ 23), and that Acacia

"exercises complete domination over [the Subsidiaries]." (Compl. ¶ 24).  Microsoft does not

allege a single well-pled fact in support of these conclusory allegations.  These allegations are

insufficient as a matter of law to state a claim based on an alter ego theory of liability.

Under Texas law, a plaintiff bears the burden of establishing alter ego liability.  United

States ex rel. Wilkins v. N. Am. Constr. Corp., 173 F. Supp. 2d 601, 643 & n.35 (S.D. Tex.

2001) (citing Alpine View Co. v. Atlas Copco AB, 205 F.3d 208, 219 (5th Cir. 2000)).  To

satisfy that burden, the plaintiff must demonstrate two things:  (1) the parent corporation

operated the subsidiary corporation without regard to their corporate separateness, and (2) that

operation contravened the policies supporting the principal of limited liability.  SSP Partners v.

Gladstrong Invs. Corp., 275 S.W.3d 444, 455 (Tex. 2008).[17]

When a plaintiff fails to allege well-pleaded allegations that, accepted as true, could

satisfy the elements of alter ego, courts do not hesitate to grant motions to dismiss alter ego

claims.  For example, in U.S. ex rel. Wilkins v. North Am. Constr. Corp., 173 F. Supp. 2d 601

---

[16] To the extent Microsoft argues it cannot assert counterclaims against Acacia in the Subsidiary Actions because Acacia is not yet a party, the Federal Rules provide Microsoft a procedural tool to assert third-party claims.  Fed. R. Civ. P. 14.

[17] Microsoft also apparently alleges alter ego liability under a "single business enterprise" theory.  (Compl. ¶ 23.) However, Texas has explicitly rejected the "single business enterprise" theory because such a "theory is fundamentally inconsistent with the approach taken by the [Texas] Legislature" to corporate law and limited liability.  SSP Partners, 275 S.W.3d at 456.

23

(S.D. Tex 2001), the qui tam relator sued a subsidiary company for submitting false claims to the government.  Id. at 609.  The relator also sued the parent company as an alter ego, alleging that there was "common stock ownership; common officers; common business departments; that [the parent] on occasion paid the salaries and expenses of [the subsidiary], [] that some operations of [the parent] and [the subsidiary] [were] not kept separate, [and] that [the subsidiary] was operated as a mere tool or business conduit of [the parent]."  Id. at 644.  The court found these allegations insufficient.  Id.  It observed that if such conclusory allegations were sufficient, "most subsidiaries would be considered alter egos of their parents."  Id.  See, e.g., Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC, 861 F. Supp. 2d 344, 376-77 (S.D.N.Y. 2012) (dismissing conclusory alter ego allegations under Delaware law as insufficient to state a claim).

Like in North American, Microsoft's fact-starved Complaint is devoid of the specific information necessary to support an alter ego theory.  Instead, Microsoft only makes the naked assertion that Acacia "controlled" and "dominat[ed]" the Subsidiaries. (Compl. ¶¶ 23-24.)  But such formulaic allegations are insufficient to allege an alter ego claim.[18]

---

[18] Microsoft's pre-motion conference letter identifies Texas as the law for alter ego liability because  Acacia's Subsidiaries were formed under Texas law.  Without conceding that Texas law applies, Acacia notes that Microsoft's alter ego allegations fail whether the Court applies Texas law, Delaware law (Acacia is a Delaware corporation), or New York law (per Contract's choice of law clause).  See, e.g., N. Am. Constr. Corp., 173 F. Supp. 2d 601, 643 & n.35 (S.D. Tex. 2001) (citing Alpine View Co. v. Atlas Copco AB, 205 F.3d 208, 219 (5th Cir. 2000)) (dismissing alter ego allegations where the complaint did not state any facts to support the conclusory allegation that the subsidiary was "operated as a mere tool or business conduit" of the parent); EED Holdings v. Palmer Johnson Acquisition Corp., 387 F. Supp. 2d 265, 2004 U.S. Dist. LEXIS 20910 (S.D.N.Y. 2004) (dismissing alter ego claims for failure to plead facts establishing the elements of the claim); Cummins Power, 861 F. Supp. 2d 344, 376-77 (S.D.N.Y. 2012) (applying Delaware law and dismissing alter ego allegations for failure to plead facts as to each element of the doctrine) (citing Waite v.Schoenbach, No. 10-CV-3439, 2010 U.S. Dist. LEXIS 115470, *3-4, *10 (S.D.N.Y. Oct. 29, 2010) (dismissing alter ego claim because plaintiff's "unsupported assertions" that owners and officers of one company "exercised complete dominion and control" over other company, "that companies operate at the same location and share employees, officers, owners, and bank accounts," and that companies "shift money and assets between themselves in an effort to defraud creditors," were "insufficient to pierce the corporate veil")).

24

## V.     CONCLUSION

For the foregoing reasons, Acacia respectfully requests the Court dismiss Microsoft's Complaint in its entirety.  Further, because the Contract is unambiguous, amendment of Microsoft's Complaint would be futile.  Therefore, Acacia respectfully requests that dismissal be with prejudice.

Dated:  January 21, 2014

STRADLING, YOCCA, CARLSON, & RAUTH, P.C.          HERRICK, FEINSTEIN LLP


s/ Marc J. Schneider                                              s/ Scott E. Mollen
Marc J. Schneider                                                 Scott E. Mollen
Travis P. Brennan (admitted *pro hac vice*)          Steven D. Feldman
Bradley E. Marrett (admitted *pro hac vice*)         2 Park Avenue
660 Newport Center Drive, Suite 1600                 New York, New York 10016
Newport Beach, CA  92660                                  Tel:  (212) 592-1400
Telephone:  (949) 725-4000                                 Fax:  (212) 592-1500
Facsimile:  (949) 725-4100                                  smollen@herrick.com
mschneider@sycr.com                                         sfeldman@herrick.com
tbrennan@sycr.com
bmarrett@sycr.com                                            Attorneys for Defendant
                                                                         Acacia Research Corporation
Attorneys for Defendant
Acacia Research Corporation

**CERTIFICATE OF SERVICE**

I certify that on January 21, 2014, the foregoing document(s):

**Defendant Acacia Research Corporation's Motion to Dismiss Microsoft Corporation's Complaint Pursuant to F.R.C.P. 12(b)(6)**

was/were served on all parties or their counsel of record through the CM/ECF system.


s/ Marc J. Schneider
Marc J. Schneider