UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

MICROSOFT CORPORATION,                      :

                    Plaintiff,               :     ECF

      -against-                         :     No. 13 Civ. 8275 (PAC) (MHD)

ACACIA RESEARCH CORPORATION,         :

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x


# MICROSOFT CORPORATION'S OPPOSITION TO
# ACACIA RESEARCH CORPORATION'S
# MOTION TO DISMISS THE COMPLAINT


SIDLEY AUSTIN LLP                          DECHERT LLP

Steven M. Bierman                          Andrew J. Levander
James D. Arden                             Matthew L. Mazur
787 Seventh Avenue                         Gordon Sung
New York, New York 10019                   1095 Avenue of the Americas
                                           New York, NY  10036-6797

David T. Pritikin
Richard A. Cederoth
Ellen S. Robbins
Nathaniel C. Love
One South Dearborn
Chicago, Illinois 60603


*Attorneys for Plaintiff Microsoft Corporation*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................... 1

LEGAL STANDARD............................................................................................................ 4

ARGUMENT ....................................................................................................................... 4

I.     ARC'S VENUE ARGUMENTS ARE BOTH INCORRECT AND
IRRELEVANT TO ITS MOTION TO DISMISS FOR FAILURE TO STATE A
CLAIM.................................................................................................................... 4

II.    MICROSOFT'S COMPLAINT STATES A CLAIM FOR BREACH OF
CONTRACT ............................................................................................................ 6

      A.    ARC Breached The Contract ........................................................................ 7

      B.    Microsoft Is Entitled To Damages For ARC's Breaches.................................... 13

III.   MICROSOFT'S COMPLAINT STATES A CLAIM FOR ABUSE OF PROCESS ...... 15

      A.    ARC Abused Process By Orchestrating The Filing Of The Seven ARC
Actions For The Purpose Of Artificially Multiplying Microsoft's
Litigation Costs................................................................................... 15

      B.    Microsoft Has Adequately Pleaded ARC's Liability For Abuse Of Process ...... 18

IV.   MICROSOFT'S COMPLAINT STATES A CLAIM FOR DECLARATORY
JUDGMENT ......................................................................................................... 20

CONCLUSION.................................................................................................................. 22

## TABLE OF AUTHORITIES

**CASES**

*511 West 232nd Owners Corp. v. Jennifer Realty Co.*,
  98 N.Y.2d 144 (N.Y. 2002) ....................................................................................11

*AGCS Marine Ins. Co. v. Assoc. Gas & Oil Co.*,
  775 F. Supp. 2d 640 (S.D.N.Y. 2011).......................................................................6

*Alpine View Co. Ltd. v. Atlas Copco AB*,
  205 F.3d 208 (5th Cir. 2000) ..................................................................................20

*Artvale, Inc. v. Rugby Fabrics Corp.*,
  363 F.2d 1002 (2d Cir. 1966)...........................................................................13, 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................4

*Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W.D. Tex.*,
  134 S. Ct. 568 (2013).........................................................................................4–5

*Barquis v. Merch. Collection Ass'n of Oakland, Inc.*,
  496 P.2d 817 (Cal. 1972) ........................................................................................15

*Bd. of Educ. of Farmingdale Union Free School Dist. v. Farmingdale Classroom
  Teachers Ass'n, Inc.*,
  46 A.D.2d 794 (N.Y. App. Div. 2d Dep't 1974) ....................................................16

*Benitec Austl. Ltd. v. Nucleonics, Inc.*,
  495 F.3d 1340 (Fed. Cir. 2007)............................................................................8–9

*Bluegrass Hosiery, Inc. v. Speizman Indus., Inc.*,
  214 F.3d 770 (6th Cir. 2000) ...................................................................................5

*Cellular Commc'ns Equip. LLC v. Microsoft Corp.*,
  No. 13-cv-738 (E.D. Tex.) ..................................................................................8, 18

*Cordell v. McGraw-Hill Cos.*,
  No. 12 Civ. 0637, 2012 U.S. Dist. LEXIS 152398 (S.D.N.Y. Oct. 23, 2012) ........12

*Curiano v. Suozzi*,
  63 N.Y.2d 113 (N.Y. 1984) ...............................................................................15, 16

*Data Engine Techs. LLC v. Microsoft Corp.*,
  No. 13-cv-735 (E.D. Tex.) .............................................................................3, 7, 16

*Dickey's Barbecue Rests., Inc. v. Mathieu*,
No. 12-cv-5119, 2013 U.S. Dist. LEXIS 133204 (N.D. Tex. Sept. 18, 2013) ........................8

*Edwards Co. v. Monogram Indus., Inc.*,
700 F.2d 994 (5th Cir. 1983) ......................................................................................19

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
387 F. Supp. 2d 265 (S.D.N.Y. 2004)..........................................................................20

*Enzo Biochem, Inc. v. PerkinElmer, Inc.*,
No. 03 Civ. 3817, 2013 U.S. Dist. LEXIS 159060 (S.D.N.Y. Oct. 28, 2013) ........................11

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
375 F.3d 168 (2d Cir. 2004)..........................................................................................11

*Famous Horse Inc. v. 5th Ave. Photo Inc.*,
624 F.3d 106 (2d Cir. 2010)............................................................................................4

*Fletcher v. ATEX, Inc.*,
68 F.3d 1451 (2d Cir. 1995)..........................................................................................19

*FlightSafety Int'l v. Flight Options LLC*,
418 F. Supp. 2d 103 (E.D.N.Y. 2005) ..........................................................................13

*Hard Rock Cafe Int'l (USA), Inc. v. Hard Rock Hotel Holdings LLC*,
808 F. Supp. 2d 552 (S.D.N.Y. 2011)...........................................................................11

*Heartland Recreational Vehicles, LLC v. Forest River, Inc.*,
No. 11-cv-250, 2012 U.S. Dist. LEXIS 130690 (N.D. Ind. Sept. 12, 2012) ........................16

*Hewitt v. Helms*,
482 U.S. 755 (1987).......................................................................................................21

*Hoffman v. Blaski*,
363 U.S. 335 (1960).........................................................................................................6

*Innovative Display Techs. LLC v. Microsoft Corp.*,
No. 13-cv-00783 (E.D. Tex.) ...............................................................................17, 18

*Intercarrier Commc'ns LLC v. Interop Techs., LLC*,
No. 13-cv-21463 (S.D. Fla.) .........................................................................................17

*Intercarrier Commc'ns LLC v. Iris Wireless, LLC*,
No. 12-cv-00770 (E.D. Va.)..........................................................................................17

*Intercarrier Commc'ns LLC v. Microsoft Corp.*,
No. 13-cv-1639 (D. Del.) ..........................................................................................7, 17

*Jomico, LLC v. Traxys N. Am., LLC*,
  No. CIV-09-342, 2010 U.S. Dist. LEXIS 64668 (E.D. Okla. June 29, 2010) .......................... 6

*Kiobel v. Royal Dutch Petroleum Co.*,
  621 F.3d 111 (2d Cir. 2010) ................................................................................................. 18

*Magi XXI, Inc. v. Stato della Citta del Vaticano*,
  714 F.3d 714 (2d Cir. 2013) .................................................................................................... 6

*Martinez v. Bloomberg LP*,
  No. 12-3654-cv, 2014 U.S. App. LEXIS 686 (2d Cir. Jan. 14, 2014) ..................................... 6

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) .............................................................................................................. 20

*Nat'l Gear and Piston, Inc. v. Cummin Power Sys., LLC*,
  861 F. Supp. 2d 344 (S.D.N.Y. 2012) .................................................................................... 20

*Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*,
  392 F.3d 520 (2d Cir. 2004) .................................................................................................. 11

*Nat'l Union Fire Ins. Co. v. Jett*,
  118 F.R.D. 336 (S.D.N.Y. 1988) .............................................................................................. 5

*Nebraskaland, Inc. v. Sunoco, Inc.*,
  No. 10-cv-1091, 2010 U.S. Dist. LEXIS 129013 (E.D.N.Y. Dec. 7, 2010) .................... 20–21

*Nike, Inc. v. Adidas Am., Inc.*,
  No. 05-cv-541, 2006 U.S. Dist. LEXIS 90483 (D. Or. Dec. 14, 2006) .................................... 8

*Norfolk S. Ry. v. Trinity Indus., Inc.*,
  No. 07-cv-1905, 2008 U.S. Dist. LEXIS 110274 (N.D. Tex. Sept. 2, 2008) ......................... 19

*O'Bradovich v. Village of Tuckahoe*,
  325 F. Supp. 2d 413 (S.D.N.Y. 2004) ............................................................................... 15, 16

*Okla. Police Pension & Ret. Sys. v. U.S. Bank Nat. Ass'n*,
  291 F.R.D. 47 (S.D.N.Y. 2013) .............................................................................................. 13

*Optimum Content Protection LLC v. Microsoft Corp.*,
  No. 13-cv-00741 (E.D. Tex.) ............................................................................................ 17–18

*Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*,
  No. 03-3134, 2006 U.S. App. LEXIS 20545 (10th Cir. Apr. 11, 2006) ................................... 8

*Perry v. Manocherian*,
  675 F. Supp. 1417 (S.D.N.Y. 1987) ....................................................................................... 16

*SSP Partners v. Gladstrong Inv. (USA) Corp.*,
  275 S.W.3d 444 (Tex. 2008) ........................................................................19

*Tryco Enters. v. Robinson*,
  390 S.W.3d 497 (Tex. App. 2012) ...............................................................19

*U.S. ex rel. Wilkins v. N. Am. Constr. Corp.*,
  173 F. Supp. 2d 601 (S.D. Tex 2001) ...........................................................20

*Video Streaming Solutions LLC v. Microsoft Corp.*,
  No. 13-cv-07031 (N.D. Ill.) ...............................................................8, 12, 17

*Video Streaming Solutions LLC v. Motorola Solutions LLC*,
  No. 13-cv-03992 (N.D. Ill. Dec. 11, 2013) ..................................................17

*Waite v. Schoenbach*,
  No. 10 Civ. 3439, 2010 U.S. Dist. LEXIS 115470 (S.D.N.Y. Oct. 29, 2010) .......................20

*Walker v. Schult*,
  717 F.3d 119 (2d Cir. 2013) ...........................................................................4

*WhatsApp, Inc. v. Intercarrier Commc'ns LLC*,
  No. 13-cv-04272 (N.D. Cal.) .........................................................................17

*Yu v. Signet Bank/Virginia*,
  69 Cal. App. 4th 1377 (Cal. App. 1999) ..................................................15–16

STATUTES

28 U.S.C. § 1391 ......................................................................................................5

28 U.S.C. § 1404(a) .................................................................................................6

28 U.S.C. § 2201 ....................................................................................................20

RULES

Fed. R. Civ. P. 8(a) .................................................................................................4

Fed. R. Civ. P. 12(b)(3) ..........................................................................................4

Fed. R. Civ. P. 12(b)(6) ...................................................................................1, 4, 5

Fed. R. Civ. P. 13(a) ...............................................................................................5

Microsoft Corporation ("Microsoft") respectfully submits this memorandum of law in opposition to Acacia Research Corporation's Motion To Dismiss Microsoft Corporation's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), filed on January 21, 2014 (Dkt. 28) (cited herein as "Mot.").

## PRELIMINARY STATEMENT

On October 1, 2013, Acacia Research Corporation ("ARC") orchestrated the filing of seven patent infringement suits ("the ARC Actions") against Microsoft, by seven of ARC's subsidiaries, in four different courthouses, in three different states around the country. All seven ARC Actions assert claims in violation of the September 30, 2010 Option Agreement and License and Covenant Addendum (collectively, the "Contract"), and ARC's conduct in orchestrating this campaign further constitutes an abuse of process.

After ARC brought these vexatious lawsuits, Microsoft filed the Complaint in this case, which seeks damages and an injunction to prevent ARC from continuing to breach the Contract and misuse the legal system. In response, ARC moves to dismiss, but fails even to address multiple aspects of the Complaint, misapprehends Microsoft's claims, advances arguments that are not even grounds for relief under Fed. R. Civ. P. 12(b)(6), and otherwise misapplies the law to the facts alleged. ARC's motion should be denied.

## BACKGROUND

The Contract distinguishes between Existing Patents owned by ARC or its affiliates on September 30, 2010, when the Contract was signed, and those acquired by ARC after that date ("Later-Acquired Patents"). Compl. Ex. A (Contract §§ 1.3, 1.4). ARC contends that the patents asserted in the ARC Actions are all Later-Acquired Patents—*i.e.*, patents that were acquired during the License Period. (Mot. 5.) The Contract "forever immunizes" Microsoft against any claims of infringement under such patents arising before September 30, 2013. Compl. ¶ 12(b).

ARC expressly promised that neither it nor its affiliates would claim that Microsoft had infringed such patents *before or during* the License Period.  *See, e.g.*, Contract § A6.1.2 ("ARC on behalf of itself and the other Acacia Entities represents and warrants that the Acacia Entities have not taken and will not take any action … to encourage, assist, benefit from or participate in any way in any patent infringement lawsuits or patent infringement assertions against any Microsoft Entities for activities occurring prior to the end of the License Period.").  And ARC agreed "to indemnify Microsoft and hold it harmless against any assertion of infringement prohibited by the Contract."  Compl. ¶ 14.

The Contract granted Microsoft a license for Acacia Licensed Patents (those ARC believed Microsoft infringed), Contract § A2.1, and a covenant not to sue for Acacia Covenanted Patents (those ARC did not believe were infringed), *id.* § A2.2.  Through Schedule A and Sub-Exhibit A-1 to the Contract, to be updated by ARC annually to account for patents ARC might acquire during the License Period,[1] the Contract also required ARC to notify Microsoft which Acacia Patents were "Licensed Patents" (believed by ARC to be infringed) or "Covenanted Patents" (not infringed).  *See* Compl. ¶ 13; Contract §§ 1.3, A1.2, A1.3.  ARC provided this notice to Microsoft when the Contract was signed and, significantly, at least once by amended exhibits through an "update" during the License Period.  Compl. ¶¶ 15, 18, 35.

On October 1, 2013, the day after the License Period ended, ARC subsidiaries filed seven lawsuits, in four different courthouses, in three different states across the country, alleging that Microsoft infringed 18 patents.  *Id.* ¶ 16.  This barrage of coordinated litigation breached the Contract in numerous respects and injured Microsoft.

---

[1]       The Contract required ARC to update its lists of patents (*i.e.*, to identify any Later-Acquired Patents) no later than 30 days before the contract anniversary date—that is, by no later than August 30, in each of the years 2011, 2012, and 2013.  Contract § A6.7; *see also id.* § A1.3 (referring to "the Acacia Patents listed in Sub-Exhibit A.1 *as may be amended* …." (emphasis added)).

All of the ARC Actions assert patents covered by the Contract, and, among other things, (a) "[a]llege[d] infringement by Microsoft prior to October 1, 2013," (b) "[a]llege[d] the absence of a Microsoft license prior to October 1, 2013," (c) "[sought] damages from Microsoft for sales and activities during the [License Period]," (d) "[sought] damages from Microsoft for sales and activities occurring prior to September 30, 2010," and/or (e) "[alleged] willful infringement by Microsoft" or inducement in violation of the Contract.  *Id.* ¶¶ 31, 37.

Further, the lawsuits show that ARC breached the notice provisions of the Contract, including the "update" provision.  The ARC Actions assert patents that ARC had never identified under the contract as patents that ARC believed Microsoft infringed, including some it had identified as patents Microsoft "did *not* infringe."  *Id.* ¶ 18; *see also id.* ¶¶ 15, 32–36.  ARC's assertion of infringement of those same patents the day after the expiration of the License Period establishes that its earlier updates (and lack of any update, in some instances) breached the Contract.  *See id.* ¶¶ 35, 36(c).

Microsoft's Complaint further alleges that ARC abused process, including by orchestrating the filing and litigation of the seven ARC Actions and by acting with the full knowledge that claims asserted in the ARC Actions were baseless.  *Id.* ¶¶ 40–47.  In particular, ARC knew, among other things, that Microsoft held separate licenses for the asserted patents, that the manufacturer of the component alleged to infringe ARC's patents held licenses, or that Microsoft had sold the business segment that developed and marketed the allegedly infringing product before the end of the License Period.  *Id.* ¶¶ 19, 20, 21, 42.[2]  Microsoft also seeks a declaration of its rights under the Contract, *id.* ¶¶ 48–51, as well as damages and an injunction

---

[2]     In recognition of the baseless nature of one of the ARC Actions, given a prior license to Microsoft from the previous owner of the patents that ARC was well aware of, on January 16, 2014, the ARC subsidiary voluntarily dismissed it.  *See* Dkt. Rep., *Data Engine Techs. LLC v. Microsoft Corp.*, No. 13-cv-735 (E.D. Tex.) (Dkt. 35) (annexed as Exhibit 4 to ARC's Request for Judicial Notice ("RJN")).

compelling ARC and its affiliates to comply with the Contract and barring ARC from asserting infringement of patents that it previously identified to Microsoft as non-infringing, *id.* at p. 14.

## LEGAL STANDARD

Fed. R. Civ. P. 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint meets this threshold if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court's task on a motion to dismiss "is necessarily a limited one":  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (internal quotation marks and citations omitted).  The court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in plaintiff's favor."  *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).

## ARGUMENT

### I.  ARC's Venue Arguments Are Both Incorrect And Irrelevant To Its Motion To Dismiss For Failure To State A Claim.

ARC dedicates much of its brief to the argument that Microsoft's claims here should be litigated in the disparate fora where ARC caused its affiliates to assert patent infringement claims.  (*See* Mot. 1, 13–14, 19–24).  These arguments have no bearing on ARC's motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), which requires ARC to demonstrate that the Complaint fails to state a claim for which relief may be granted.

ARC's venue arguments are irrelevant, and would be irrelevant even to a motion (not made by ARC) under Rule 12(b)(3) charging "improper" venue.  The only "improper" venue is one in which ARC would not have been subject to suit.  *See Atl. Marine Constr. Co., Inc. v. U.S.*

*Dist. Ct. for the W.D. Tex.*, 134 S. Ct. 568, 577–79 (2013) (venue is proper wherever the requirements of 28 U.S.C. § 1391 are met). As the Complaint explicitly alleges, the venue requirements of 28 U.S.C. §§ 1391(b)(1) and (c)(2) are amply satisfied here.[3] Compl. ¶ 27. Further, ARC's legally-meaningless venue argument is also factually incorrect. Microsoft's claims *here* undeniably include contract claims that "directly aris[e]" under the Contract, and therefore fall squarely within the Contract's forum selection clause, under which ARC consented to exclusive jurisdiction and venue here, consented to personal jurisdiction here, and waived the defense of forum *non conveniens*. Contract § 4.10.

Faced with a clear forum-selection and jurisdiction clause, and clearly adequate venue allegations in the Complaint, ARC argues that Microsoft should still be barred from asserting its claims here because they supposedly are compulsory counterclaims in the ARC Actions to which ARC is not even a party. (Mot. 21–23.) Not surprisingly, ARC is unable to cite a single case establishing its reasoning as a grounds for a Rule 12(b)(6) motion. At any rate, any counterclaims in the ARC Actions need not be asserted until such time as Microsoft is obligated to answer—and because that time had not yet arrived when the Complaint here was filed, the compulsory counterclaim rules simply pose no bar to the claims here. *See, e.g.*, *Bluegrass Hosiery, Inc. v. Speizman Indus., Inc.*, 214 F.3d 770, 772 (6th Cir. 2000) ("Where the rules do not require a pleading because of pending motions, the compulsory counterclaim requirement of Rule 13(a) is inapplicable."); *Nat'l Union Fire Ins. Co. v. Jett*, 118 F.R.D. 336, 337 (S.D.N.Y. 1988) (Rule 13(a) bar inapplicable where claimant was not required to file a responsive pleading in the earlier action).

---

[3]     ARC's contention that the *patent infringement claims* in the *underlying ARC Actions* are not governed by the forum selection clause (Mot. 19–21) raises issues that will be decided on Microsoft's motions to dismiss and transfer in *those actions*, but it has no relevance whatsoever to whether Microsoft adequately pleaded venue here or whether Microsoft's *contract-based* claims against ARC *in this case* were filed in the appropriate place.

And even if Microsoft later decides to assert contract-based counterclaims in one or more of the ARC Actions, venue would remain proper here. *See Jomico, LLC v. Traxys N. Am., LLC*, No. CIV-09-342, 2010 U.S. Dist. LEXIS 64668, at *15–16 (E.D. Okla. June 29, 2010) ("[Defendant] cites no authority whatsoever for the proposition that otherwise proper venue becomes improper simply because the claim could have been asserted in another proceeding as a compulsory counterclaim, and the Court is aware of no such authority."); *see also AGCS Marine Ins. Co. v. Assoc. Gas & Oil Co.*, 775 F. Supp. 2d 640, 646 (S.D.N.Y. 2011) ("In considering where an action 'might have been brought' for purposes of a § 1404(a) [motion to transfer venue], a district court must look solely to the state of affairs at the time the action was commenced.") (citing *Hoffman v. Blaski*, 363 U.S. 335, 342 (1960)).  Microsoft not only had every right to file its contract claims against ARC here, in fact, it was *required* to do so by the Contract's forum selection clause.

ARC asks this Court to dismiss this case and to force Microsoft to litigate its claims for breach of the Contract *not* in the forum specified by the parties in the Contract, but in each of the multiplicity of jurisdictions where ARC has chosen to breach.  To state this argument is to demonstrate its absurdity.  The Contract's forum selection clause should be upheld.  *See Martinez v. Bloomberg LP*, No. 12-3654-cv, 2014 U.S. App. LEXIS 686, at *15-16 (2d Cir. Jan. 14, 2014) ("Forum selection clauses 'further vital interests of the justice system, including judicial economy and efficiency, ensure that parties will not be required to defend lawsuits in far-flung fora, and promote uniformity of result.") (quoting *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 722 (2d Cir. 2013)).

## II.    Microsoft's Complaint States A Claim For Breach Of Contract.

The Complaint states at least three different ways in which ARC breached the Contract, yet ARC confronts only two in its brief, sinking its motion from the outset.  First, as ARC has

conceded through amendments and stipulations, the complaints in the ARC Actions each

asserted claims for damages based on alleged patent infringement by Microsoft before October 1,

2013, in violation of the Contract.  Second, ARC breached the Contract's "update" provisions by

failing to inform Microsoft of Later-Acquired Patents that ARC believed Microsoft was

infringing; in fact, ARC informed Microsoft that it believed some of the patents asserted in the

ARC Actions were not infringed, yet ARC then sued on them.  Third, ARC breached the

Contract by using disclosures made to Microsoft in connection with the Contract as a basis for

alleging in the ARC Actions that Microsoft is liable for willful infringement or inducement.

### A.   ARC Breached The Contract.

ARC's claim that the complaints filed in the ARC Actions do not seek past damages

(Mot. 10) is demonstrably false.  As Microsoft alleged here, the seven complaints plainly

claimed damages arising from alleged infringement by Microsoft before October 1, 2013.

Compl. ¶ 31.  For instance, the October 1 complaint in *Data Engine Technologies v. Microsoft

Corporation*, No. 13-cv-00735 (E.D. Tex. – Tyler Div.) (RJN Ex. 5), alleged that Microsoft "*has

committed and/or induced* acts of patent infringement (¶ 5), that Microsoft "*has been* and is

now" directly and indirectly infringing (¶¶ 13, 17, 22, 25, 30, 34), and that "Data Engine *has

been* damaged by Microsoft's infringement" (¶¶ 19, 27, 36) (emphases added).  Similarly, the

October 1 complaint in *Intercarrier Communications LLC v. Microsoft Corporation*, No. 13-cv-

1639 (D. Del.) (RJN Ex. 11), alleged that Microsoft "*has* and continues to directly infringe"

(¶ 15), that Microsoft "*has induced* and continues to induce others to infringe" (¶ 17), that

Microsoft "*has engaged* in such actions with specific intent to cause infringement" (¶ 18), that

Microsoft "*has committed* and continues to commit acts of contributory infringement," that "ICC

*has been harmed*" (¶ 22), and seeks "an award of damages . . . to compensate ICC for [Microsoft's] *past infringement*" (*Id.* at 5) (emphases added).[4]

ARC's efforts to paper over this breach (*e.g.*, claiming ARC's subsidiaries "removed any possible ambiguity by amendment of the complaint or judicial admission," Mot. 10) fail, and are in any event irrelevant to its motion.  Even if ARC had ended one of its ongoing breaches, remedial action by a defendant does not "moot" a plaintiff's breach of contract claims.[5]  Instead, the ARC amendments and stipulations operate as a concession that Microsoft is correct:  the original October 1, 2013, ARC Action complaints sought damages for infringement prior to that date, thereby breaching the Contract.[6]

---

[4]     The ARC Action complaints cited in ARC's brief are no different.  In *Cellular Communications Equipment LLC v. Microsoft Corporation*, No. 13-cv-738 (E.D. Tex. – Tyler Div.) (RJN Ex. 2; cited at Mot. 10), the complaint alleged on October 1st, that Microsoft "*has committed* acts of infringement" (¶ 5), that Microsoft "*has directly infringed* and continues to directly infringe" (¶ 10), and that "CCE *has been damaged* as a result of Microsoft's infringing conduct" (¶ 11) (emphases added).  In *Video Streaming Solutions LLC v. Microsoft Corporation*, No. 13-cv-07031 (N.D. Ill.) (RJN Ex. 17; cited at Mot. 10–11), the complaint alleged on October 1st, that Microsoft "*has committed* acts of infringement" (¶ 5), that Microsoft "*has* and continues to" directly and indirectly infringe" (¶¶ 11, 13, 17, 24, 29, 31, 35, 42,  47, 49, 53, 60, 65, 67, 71, 78), and that "Video Streaming *has been damaged*" (¶¶ 17, 24, 35, 42, 53, 60, 71, 78) (emphases added).  In the prayer for judgment, the complaint sought, among other things, a royalty "because of [Microsoft's] *past … infringing activities.*"  *Id.* at 17 (emphasis added).

[5]     *See, e.g.*, *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, No. 03-3134, 2006 U.S. App. LEXIS 20545, at *30 (10th Cir.  Apr. 11, 2006) (where plaintiff sued for breach of contract based on defendant's failure to offer a new exclusive bottling appointment ("EBAs"), defendant's later offer of an EBA "does not moot [plaintiff's] claim because [plaintiff] may still recover damages for any injury it sustained" while defendant was in breach); *Dickey's Barbecue Rests., Inc. v. Mathieu*, No. 12-cv-5119, 2013 U.S. Dist. LEXIS 133204, at *23–24 (N.D. Tex. Sept. 18, 2013) (claims for breach of franchise-restaurant agreement were not mooted because defendant no longer operated the restaurant because it "does not mean that his past breaches of contract did not damage [plaintiff]").

[6]     The cases cited by ARC do not remotely support ARC's contention that a claim for breach of contract is rendered moot where the breaching party agrees to drop the offending part of its suit.  In *Nike, Inc. v. Adidas Am., Inc.*, No. 05-cv-541, 2006 U.S. Dist. LEXIS 90483 (D. Or. Dec. 14, 2006) (cited at Mot. 11), the plaintiff, Nike, sought a declaratory judgment that a sneaker bearing a two-stripe design would not infringe on Adidas's trademarked three-stripe design.  Thereafter, Adidas stipulated that it would not sue Nike for infringement of the three-stripe mark arising from Nike's sale of the two-stripe sneaker.  *Id.* at *11–12.  The court held that Adidas's stipulation rendered Nike's claims moot, notwithstanding Nike's argument that it could not be sure that Adidas might sue over future designs with stripes.  *Id.* *16.  Plainly, *Nike* has nothing to do with this case, which does not allege only that breaches of the Contract might occur in the future, but that ARC has *already* breached the Contract and has already caused damages.  Nor does *Nike* suggest that Microsoft's claim for a declaratory judgment is moot, since ARC has not stipulated that neither it nor its subsidiaries will participate in any future suits claiming infringement of their patents by Microsoft before October 1, 2013.  *Benitec Austl. Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340 (Fed. Cir. 2007) (cited at Mot. 11), is equally inapposite.  In *Benitec*, a patent holder brought suit against a competitor, and the defendant counterclaimed for declarations that the asserted patent was invalid and

The Complaint also alleges that ARC breached the notice provisions of the Contract (including the "update" provision) by failing to provide accurate and timely written updates that categorized which ARC patents ARC believed Microsoft was (and was not) infringing,  Compl. ¶¶ 13, 32, 36(a), and by failing to inform Microsoft that any of the 18 patents asserted in the ARC Actions were patents that ARC believed Microsoft infringed and for which Microsoft, in ARC's opinion, would need a license at the end of the License Period, *id.* ¶ 36(b).[7]

ARC provides no basis to dismiss Microsoft's breach claim as to the notice provisions of the Contract.  ARC does not disavow its own prior representations, including those in the (untimely) December 2012 update.  Nor does it dispute its failure to provide accurate and timely updates as required by the Contract.  Instead, ARC responds by offering its own interpretation of the Contract (Mot. 5–6, 11–12) that is inconsistent with the Contract read as a whole.  In particular, ARC's interpretation would render meaningless the Contract's central distinction between "licensed" and "covenanted" patents, and its express recognition that the list of Acacia Covenanted Patents on Sub-Exhibit A.1 was to be "amended" after the original Contract was executed.  *See* Contract § A1.3 (defining "Acacia Covenanted Patents" as "the Acacia Patents listed in Sub-Exhibit A.1 *as may be amended* under the terms of this License and Covenant

---

unenforceable. *Id.* at 1342–43. After realizing that its claims were not viable, the plaintiff moved to dismiss its complaint without prejudice. *Id.* at 1343. The court granted the dismissal and also dismissed the counterclaims for lack of subject matter jurisdiction under the Declaratory Judgment Act. *Id.* The Federal Circuit rejected the defendant's argument that it should be allowed to litigate the counterclaim challenging the validity and enforceability of the patent to avoid uncertainty in the future, holding that dismissal of the counterclaims was proper because the dismissal of the patent infringement suit eliminated any controversy of "sufficient immediacy and reality" to support a declaratory judgment. *Id.* at 1349. *Benitec* has no application here, where Microsoft has brought affirmative claims for damages based on ARC's breaches of the Contract—some of which ARC now admits.

[7]      The Complaint also alleges that ARC had a motive to avoid identifying patents as Acacia Licensed Patents, since that designation would likely trigger an obligation for ARC to pay third parties part of the money ARC received from Microsoft.  Compl. ¶ 33.

Addendum or as otherwise mutually agreed by the parties in writing during the License Period")
(emphasis added).

Far from a mere "clerical task" (Mot. 5), ARC's duty to distinguish between "Acacia
Licensed Patents" and "Acacia Covenanted Patents" throughout the term of the parties'
agreement is a fundamental concept in the Contract.  ARC was required at the outset to identify
and categorize its patents by providing *two* patent lists (a list of all Acacia Patents in Schedule A
and a list of Acacia Covenanted Patents in Sub-Exhibit A.1) and to maintain those lists by
updating.  *See* Contract §§ 1.3, A1.3, A6.7.[8]  Indeed, in December 2012, when ARC did notify
Microsoft in an "update" of additional patents that were not on the original Schedule A (in
accordance with the update requirement in § A6.7), it simultaneously amended the list of Acacia
Covenanted Patents in Sub-Exhibit A.1—behavior consistent with Microsoft's interpretation of
the Contract, not with ARC's newborn understanding.

ARC explicitly recognized that updating both lists was required by § A6.7, writing in its
December 2012 cover letter to Microsoft:  "Enclosed please find an updated Schedule A and
Sub-Exhibit A.1, *as per Section A6.7* of the [Contract]."  *See* Decl. Matthew L. Mazur, Ex. A
(Letter from Darren Miller, ARC, to Microsoft Corp., Dec. 17, 2012, with Sub-Exhibit A.1
(redacted)) (emphasis added).  By placing Later-Acquired Patents on Sub-Exhibit A.1, ARC
"amended" Sub-Exhibit A.1 and classified those patents as "Acacia Covenanted Patents" (*i.e.*,
patents not infringed by Microsoft) under § A1.3 of the Contract.  ARC's proffered interpretation
of the Contract is therefore inconsistent with its own course of conduct.[9]

---

[8]     There is no dispute that at the outset of the Contract, ARC provided both lists as required.

[9]     As the Complaint sets forth, the amended Sub-Exhibit A.1 in this update showed that eight of the added
patents that are now at issue in the ARC Actions were categorized by ARC as Acacia Covenanted Patents (*i.e.*,
patents that ARC represented Microsoft did not infringe).  Compl. ¶¶ 15, 32, 35–36.  The update correspondingly
informed Microsoft which, if any, of the listed patents ARC believed that Microsoft was infringing ("Acacia
Licensed Patents") because, under the Contract, only those patents *not* designated as "Acacia Covenanted Patents"

Even leaving the other provisions of the Contract aside, ARC's failure to classify the patents asserted in the ARC Actions as "licensed" (believed by ARC to be infringed) patents before suing Microsoft for infringing those same patents the day after the license period expired violated the covenant of good faith and fair dealing that is implied in every contract under New York law. *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004). *See also Enzo Biochem, Inc. v. PerkinElmer, Inc.*, No. 03 Civ. 3817, 2013 U.S. Dist. LEXIS 159060, at *10–11 (S.D.N.Y. Oct. 28, 2013) (plaintiffs presented evidence that defendants schemed to distribute products in a way that would avoid higher royalty payments); *Hard Rock Cafe Int'l (USA), Inc. v. Hard Rock Hotel Holdings LLC*, 808 F. Supp. 2d 552, 568–69 (S.D.N.Y. 2011) (licensees stated claim for breach of covenant of good faith and fair dealing by alleging that licensor misled third parties with respect to right to sub-license); *511 West 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 154 (N.Y. 2002) (plaintiffs pleaded reasonable belief that the offering plan stated a duty to create a viable cooperative). The Contract required classification of Later-Acquired Patents, and ARC could not, consistent with the duty of good faith and fair dealing, abuse its responsibility to classify the patents in order to deprive Microsoft of the benefit of the Contract.

At any rate, if it is considered at all (and it should not be), ARC's tortured and selective reading of the Contract's notice provisions at most creates an ambiguity with respect to ARC's duties under the notice provisions of the Contract. But even if the Contract were ambiguous, that would provide no basis for dismissal. *See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004) ("Unless for some reason an ambiguity must be construed against the plaintiff, a claim predicated on a materially ambiguous contract term is

---

per Sub-Exhibit A.1 are "Acacia Licensed Patents." Contract §§ A1.2, A1.3. None of the patents now at issue in the ARC Actions were designated through this update to be "Acacia Licensed Patents."

not dismissible on the pleadings."); *Cordell v. McGraw-Hill Cos.*, No. 12 Civ. 0637, 2012 U.S. Dist. LEXIS 152398, at *7 (S.D.N.Y. Oct. 23, 2012) ("Where a contract is ambiguous, a motion to dismiss a breach of contract claim for failure to state a claim will be denied.").

Finally, ARC's motion to dismiss does not even address additional ways in which the Complaint alleges that ARC breached the Contract.  The Contract explicitly prohibits ARC from "using the existence, terms, and/or disclosures of the Contract, and/or discussions between Microsoft and ARC relating to the Contract, and/or Microsoft's exercise of the option under the Contract, to Microsoft's prejudice."  Compl. ¶ 37.  Specifically, ARC and its subsidiaries are barred from alleging in the ARC Actions "actual or constructive notice of the asserted patents or of Microsoft's alleged infringement … to support a claim of damages, willful infringement, or inducement" based on anything related to the Contract.  *Id.*

The Complaint alleges that the ARC Actions violated this prohibition.  *Id.*  Indeed, ARC subsidiary Video Streaming Solutions LLC ("VSS") has admitted in its ARC Action that its allegations of Microsoft's notice of the patents that were used to support its claims of inducement of infringement in its amended complaint were based on the filing of VSS's original (October 1) complaint, thereby confirming that the inducement allegations in the October 1 complaint had no pre-complaint basis except for ARC's disclosures to Microsoft under the Contract.  *See* Mazur Decl., Ex. B (Video Streaming Solutions' Sur-Reply to Microsoft's Mot. Dismiss or Transfer 7 & n.7, *Video Streaming Solutions*, 13-cv-07031 (N.D. Ill.) (Dkt. 49)). This admission establishes (as Microsoft's Complaint here alleges, *see* Compl. ¶ 37) that VSS's original complaint breached the Contract by violating the express prohibitions against using disclosures between ARC and Microsoft to Microsoft's prejudice.

### B.    Microsoft Is Entitled To Damages For ARC's Breaches.

ARC's flawed arguments that the Contract precludes Microsoft's claim for damages for some[10] of Microsoft's claims (Mot. 13–14) provide no basis for dismissal.  Initially, ARC suggests that Microsoft suffered no damages because, even if the complaints in the ARC Actions had not asserted claims for past infringement in violation of the Contract, Microsoft would have had to respond to allegations of present and future infringement (*id.* at 13)—in other words, that Microsoft's damages for the breaching assertions are *de minimis*.  This argument has no place on a motion to dismiss.  *See, e.g.*, *Okla. Police Pension & Ret. Sys. v. U.S. Bank Nat. Ass'n*, 291 F.R.D. 47, 71 (S.D.N.Y. 2013) ("[U]nder New York Law, although the evidence of damages may be slight, 'that damages are uncertain, or may not even exist, is an insufficient reason' to grant a motion to dismiss.'") (citation omitted).[11]

ARC's suggestion that covenants not to sue are sometimes asserted as affirmative defenses (Mot. 13–14) is irrelevant and misleading.  First, ARC promised more than a covenant not to sue and did more than breach a covenant not to sue.  The Contract here goes significantly further than that in *Artvale, Inc. v. Rugby Fabrics Corp.*, 363 F.2d 1002 (2d Cir. 1966), upon which ARC relies.  *See id.* at 1008 (whether a party who has breached a covenant not to sue will be liable for litigation expenses inflicted on his adversary "appears to hinge on what the parties intended by their contract.").  In addition to a covenant not to sue, ARC provided indemnification, Contract § A6.1.1, and agreed that it would not "take any action … to encourage, assist, benefit from or participate in any way in any patent infringement lawsuits or

---

[10]    ARC does not make this argument with respect to Microsoft's claims for breach of the Contract's notice/update provisions or its claim that ARC breached by using the Contract and related disclosures as the basis for claims of willfulness and/or inducement.

[11]    The only case ARC cites for this proposition, *FlightSafety Int'l v. Flight Options LLC*, 418 F. Supp. 2d 103 (E.D.N.Y. 2005), stands for the very different and unremarkable proposition that parties to a contract can agree to limit the damages recoverable upon a breach.  *See id.* at 108 (concluding that the contract at issue barred recovery for lost profits).

patent infringement assertions against any Microsoft Entities for activities occurring prior to the end of the License Period," *id.* § A6.1.2.  ARC is liable for damages, including the costs and expenses incurred by Microsoft to defend against the contractually-barred claims in the ARC Actions and in bringing this lawsuit, as a consequence of ARC's breach of these broad contractual prohibitions.[12]

The suggestion that Microsoft's indemnity claim is not "ripe" until liability has been determined in the underlying ARC Actions is also incorrect.  (*See* Mot. 12–13.)  ARC misconstrues the Complaint:  Microsoft does seek indemnity with respect to the ARC Actions, but Microsoft also seeks damages from ARC itself (not its subsidiaries) based on ARC's breach of its agreement not "to encourage, assist, benefit from or participate in any way" in any action claiming patent infringement based on activities occurring prior to October 1, 2013, as well as an injunction to prevent ARC and its affiliates from pursuing actions alleging infringement of Later-Acquired Patents that were not identified to Microsoft as infringing during the License Period, as required by the Contract.[13]  These breaches of the Contract have already occurred.[14]

ARC's convoluted argument involving "accrual" of its indemnity argument is also flawed.  ARC claims that "before Microsoft's right to indemnity accrues, [the Contract] provides that Acacia Patents must have been asserted against Microsoft in a manner inconsistent with the Contract."  (Mot. 6; *see also id.* at 12 ("[ARC's] indemnity obligations only will arise if and

---

[12]     Moreover, unlike the usual case involving the assertion of a covenant not to sue as a defense, ARC is not a party in any of the seven ARC Actions, all of which were filed by ARC subsidiaries.  And the subsidiaries have argued that ARC is not even a proper party to the ARC Actions.

[13]     Microsoft also seeks other relief for these claims.  For example, in its prayer for relief, the Complaint seeks "[m]onetary damages … sufficient to make Microsoft whole for the cost of defending the ARC Actions," and a "declaration that ARC is obligated to indemnify and hold harmless Microsoft and its affiliates against the ARC Actions."  Compl. at pp. 14–15.

[14]     ARC's assertions that it has no duty to defend Microsoft against the ARC Actions (Mot. 12–13, 18) are beside the point.  ARC itself caused the ARC Actions to be filed in violation of the Contract, and Microsoft has already been damaged by ARC's breaches.

when the court finds that an [ARC] subsidiary sued Microsoft in violation of the Contract.").)
But the assertion of patents in a manner inconsistent with the Contract is precisely what
Microsoft alleges has already happened—by the very filing of the ARC Actions.  That alone is
enough to require denial of a motion to dismiss.

### III.    Microsoft's Complaint States A Claim For Abuse Of Process.

#### A.    ARC Abused Process By Orchestrating The Filing Of The Seven ARC Actions For The Purpose Of Artificially Multiplying Microsoft's Litigation Costs.

ARC's motion ignores the abuses of process outlined in Microsoft's Complaint.  Abuse
of process has three essential elements:  "(1) regularly issued process"; "(2) an intent to do harm
without excuse or justification"; and "(3) use of the process in a perverted manner to obtain a
collateral objective."  *O'Bradovich v. Village of Tuckahoe*, 325 F. Supp. 2d 413, 434 (S.D.N.Y.
2004) (citing, *inter alia*, *Curiano v. Suozzi*, 63 N.Y.2d 113 (N.Y. 1984)).  The Complaint alleges
that ARC caused its affiliates to file seven lawsuits, in four courthouses, in three states; that all of
the ARC Actions asserted patent infringement claims in violation of the Contract; and that ARC
adopted this litigation strategy for the improper purpose of multiplying the burden and expense
on Microsoft.  Compl. ¶¶ 8, 16, 41.  It further alleges that ARC knew that claims in the ARC
Actions were "baseless" because, among other things, Microsoft held separate licenses for the
asserted patents, the manufacturer of the component alleged to infringe ARC's patents held
licenses, or Microsoft before the end of the License Period had sold the business segment that
developed and marketed the allegedly infringing product.  *Id.* ¶¶ 19, 20, 21, 42.  These
allegations are more than sufficient to state a claim for abuse of process, especially given that
abuse of process encompasses "the entire range of 'procedures' incident to litigation," including
discovery conduct, selection of improper venues, or inadequate pleadings.  *Barquis v. Merch.
Collection Ass'n of Oakland, Inc.*, 496 P.2d 817, 824 n.4 (Cal. 1972); *see also Yu v. Signet*

*Bank/Virginia*, 69 Cal. App. 4th 1377, 1390 (Cal. App. 1999) (sustaining abuse of process claim against defendant who filed suits in improper venues attempting to obtain default judgments to use as settlement leverage).

ARC's sole argument with respect to Microsoft's abuse of process claim is that "the mere filing of a lawsuit does not constitute abuse of process." (Mot. 14–16.) But ARC did not "mere[ly] fil[e] … a lawsuit," nor did Microsoft allege that each lawsuit, taken in isolation, constituted a single abuse of process. Rather, ARC launched a coordinated, multi-suit campaign through seven subsidiaries, in a manner that was transparently designed to maximize the burden and expense on Microsoft, with the full knowledge that claims asserted by its subsidiaries were meritless.[15] Indeed, in *Data Engine Technologies*, the ARC-controlled plaintiff has already voluntarily dismissed its ARC-induced complaint, after a document attached as an exhibit to that plaintiff's own court filing confirmed that ARC knew Microsoft had a separate license to the asserted patents. *See* Dkt. Rep., *Data Engine Technologies* (Dkt. 35) (RJN Ex. 4).[16]

ARC attempts to justify its tactics by claiming that "there are seven separate suits because there are seven separate and unrelated sets of patents that impact multiple different defendants." (Mot. 15.) It further suggests that "[i]f Microsoft could litigate patent claims against it in different fora than the other defendants on that same patent, the result would be multiple courts

---

[15]     In contrast, each of the cases cited by ARC involved a court dismissing an abuse of process claim that was predicated on the filing of a single lawsuit. *See O'Bradovich*, 325 F. Supp. 2d at 434; *Perry v. Manocherian*, 675 F. Supp. 1417, 1429 (S.D.N.Y. 1987); *Curiano*, 63 N.Y.2d at 117; *Heartland Recreational Vehicles, LLC v. Forest River, Inc.*, No. 11-cv-250, 2012 U.S. Dist. LEXIS 130690, at *2 (N.D. Ind. Sept. 12, 2012). ARC also cites *Bd. of Educ. of Farmingdale Union Free School Dist. v. Farmingdale Classroom Teachers Ass'n, Inc.*, 46 A.D.2d 794, 796 (N.Y. App. Div. 2d Dep't 1974), which noted that abuse of process is "not for the wrongful bringing of an action . . . but for the use, or rather 'abuse,' of process in connection therewith." *Id.* at 796. *Farmingdale*, does not, however, diminish Microsoft's claim. There, the court held that an abuse of process claim was adequately alleged where defendant issued a number of subpoenas, all returnable at the same time and place, causing the plaintiff to hire temporary teaching staff replacements "at a considerable cost." *Id.* at 795. Here, the *seven* ARC Actions are not only meritless, but set in motion legal processes, including extensive disclosure and discovery obligations, that have caused Microsoft to wrongfully divert corporate personnel and resources. Compl. ¶¶ 41, 46.

[16]     *See also* Plaintiff's Opp'n to Defendant's Mot. Dismiss or Transfer, *Data Engine Techs.* (Dkt. 29-6) at Ex. 2 (Exclusive License Agreement) (RJN Ex. 6 (document filed under seal at ARC's request)).

inefficiently deciding the same issues with a substantial risk of inconsistent judgments." (*Id.* at 8.)  Even if ARC's factual assertions were relevant to whether Microsoft's Complaint states a claim for which relief may be granted (and they are not), a glance at the relevant court records disproves ARC's frivolous claim that its abusive litigation strategy promotes efficiency.

The sole ARC Action that has been consolidated with related litigation for pretrial purposes (expressly without prejudice to Microsoft's pending motion to dismiss or transfer) is *Innovative Display Technologies LLC v. Microsoft Corp.*, No. 13-cv-00783 (E.D. Tex. – Marshall Div.).  (*See* Mot. 7–8; RJN Ex. 29.)  By contrast, in *Video Streaming Solutions*, the Northern District of Illinois declined to consolidate the case against Microsoft with the single other pending case brought by the same ARC subsidiary.  *See* Order Denying Motion to Reassign, *Video Streaming Solutions LLC v. Motorola Solutions LLC*, No. 13-cv-03992 (N.D. Ill. Dec. 11, 2013) (Dkt. 63).  In *Intercarrier Communications*, ARC's subsidiary sued Microsoft and two of its affiliates in the District of Delaware.  No related litigation appears on the docket there (*see* Mot. 7; RJN Ex. 10), but the same plaintiff previously asserted the same patent in the Southern District of Florida and the Eastern District of Virginia against thirteen different defendants, and the patent is the subject of a declaratory judgment action in the Northern District of California.  *See Intercarrier Communications LLC v. Interop Technologies, LLC*, No. 13-cv-21463 (S.D. Fla.); *Intercarrier Communications LLC v. Iris Wireless, LLC*, No. 12-cv-00770 (E.D. Va.); *WhatsApp, Inc. v. Intercarrier Communications LLC*, No. 13-cv-04272 (N.D. Cal.).

In *Optimum Content Protection LLC v. Microsoft Corporation*, No. 13-cv-00741 (E.D. Tex. – Tyler Div.), ARC's subsidiary sued Microsoft in the Eastern District of Texas, where no related litigation appears on the docket.  (*See* RJN Ex. 13.)  Moreover, *Optimum Content* is one of three separate suits in which ARC-controlled subsidiaries attack the same Microsoft product—

the Surface tablet—hardly a model of efficiency.  Compl. ¶ 16; *see also Cellular*

*Communications Equipment* (RJN Ex. 2); *Innovative Display Technologies* (RJN Ex. 9);

*Optimum Content Protection* (RJN Ex. 14).  In short, ARC's efficiency arguments are

disingenuous.

### B.     Microsoft Has Adequately Pleaded ARC's Liability For Abuse Of Process.

Microsoft's abuse of process claim does not depend on imputing the acts of the

subsidiaries to ARC, because ARC is the actor that is alleged to have abused process.  ARC itself

abused process by causing its subsidiaries to file vexatious lawsuits for their nuisance value.

Compl. ¶¶ 8, 16.  Thus, Microsoft's claim for abuse of process against ARC does not depend in

any way on an alter ego theory—meaning ARC's veil-piercing arguments are beside the point.

But in any event Microsoft has also pleaded ARC's liability under an agency or alter ego theory,

and has done so adequately.

As alleged in the Complaint, "[e]ach plaintiff in the ARC Actions is acting as ARC's

agent, and ARC exercises complete domination over them, particularly as to the wrongs against

and injuries to Microsoft."  Compl. ¶ 24.  ARC is liable to Microsoft for abuse of process

because "[the] principle of corporate separateness may be disregarded when a subsidiary acts as

an agent of its parent."  *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 194 (2d Cir. 2010).

ARC is also liable to Microsoft for the acts of its subsidiaries because the subsidiaries are ARC's

alter egos.  Under Texas law,[17] courts "disregard the corporate fiction," *inter alia*, "where a

corporation is organized and operated as a mere tool or business conduit of another corporation"

---

[17]     The ARC Actions were each filed by Texas limited liability corporations.   "Under New York choice of law
principles, '[t]he law of the state of incorporation determines when the corporate form will be disregarded."
*Fletcher v. ATEX, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (citations omitted).  The Contract's choice of law
provision, however, specifies the application of New York laws apply "exclusive of its choice of law rules."
Contract § 4.10.  If this provision was to be interpreted as requiring an application of New York law to the alter ego
issue, the result would be identical.  In New York, "[a]lter ego liability exists … when the corporation has been so
dominated by an individual or another corporation (usually a parent corporation), and its separate identity so
disregarded, that it primarily transacted the dominator's business rather than its own."  *Kiobel*, 621 F.3d at 195.

and "where the corporate fiction is resorted to as a means of evading an existing legal obligation."  *SSP Partners v. Gladstrong Inv. (USA) Corp.*, 275 S.W.3d 444, 454 (Tex. 2008) (citation omitted).  Microsoft's allegations easily meet this standard.

ARC admits that it "conducts business through [its] subsidiaries."  (Mot. at 3.)  However, ARC argues, erroneously, that Microsoft has alleged only in  "conclusory" fashion that ARC has "such control" over each ARC subsidiary that each "is an alter ego of [ARC]" and that ARC "exercises complete dominion" over the subsidiaries.  (*Id.* at 23 (citing Compl. ¶¶ 23, 24).)  ARC simply ignores the Complaint's additional factual allegations establishing ARC's liability for the obviously carefully controlled actions of its subsidiaries.  As alleged in the Complaint, ARC's patent licensing business often uses "patent enforcement litigation" or "at least the threat of legal action" in the name of its subsidiaries.  Compl. ¶ 8.  Furthermore, Microsoft alleged that "[n]o plaintiff in the ARC Actions has an independent manager, but rather is governed solely by ARG LLC, and in turn the sole member of ARG LLC is ARC."  *Id.* ¶ 23.  These allegations are sufficient to pierce the corporate veil with regard to the coordinated, abusive litigation tactics alleged in this case, and ARC contests none of them.  *See, e.g.*, *Edwards Co. v. Monogram Indus., Inc.*, 700 F.2d 994, 1000 (5th Cir. 1983); *Tryco Enters. v. Robinson*, 390 S.W.3d 497, 510-11 (Tex. App. 2012).[18]

As demonstrated by the factual allegations relating to the filing of the ARC Actions in violation of the Contract, moreover, "ARC has attempted to use and continues to attempt to use its ARC subsidiaries as a means of evading its existing legal obligations to Microsoft under the Contract."  Compl. ¶ 24.  Indeed, ARC's entire brief—which absurdly argues that, instead of

---

[18] In any event, the precise facts surrounding ARC's use of its subsidiaries to file seven coordinated actions around the country are uniquely within the control of ARC, so Microsoft's Complaint should not be dismissed before discovery. *Norfolk S. Ry. v. Trinity Indus., Inc.*, No. 07-cv-1905, 2008 U.S. Dist. LEXIS 110274, at *13–14 (N.D. Tex. Sept. 2, 2008).

suing ARC under the Contract to which it is a party, Microsoft must assert its claims against ARC's puppet subsidiaries—only confirms ARC's attempt to evade its legal obligations to Microsoft.[19]

## IV.   Microsoft's Complaint States A Claim For Declaratory Judgment.

ARC's motion only confirms that ARC and Microsoft have a live dispute over the meaning of the Contract.  By way of example, the parties are at odds on ARC's failure under the notice provisions of the Contract to identify fully and completely to Microsoft which of the patents that ARC acquired after September 30, 2010, ARC believed that Microsoft infringes, if any, Compl. ¶ 39, and ARC's obligation to indemnify Microsoft and hold Microsoft harmless against the ARC Actions, which were brought in breach of the Contract, *id.* ¶ 51.

Declaratory relief is appropriate "[i]n a case of actual controversy" between the parties. *See* 28 U.S.C. § 2201.  A case or controversy exists when there is "(1) a substantial controversy; (2) between parties having adverse legal interests; and (3) of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Nebraskaland, Inc. v. Sunoco, Inc.*, No. 10-cv-1091, 2010 U.S. Dist. LEXIS 129013, at *16 (E.D.N.Y. Dec. 7, 2010) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).  The test for establishing whether a case of actual controversy exists, and thus, makes a judicial pronouncement a "proper judicial resolution of a case or controversy, is that it 'affects the behavior of the defendant towards the plaintiff.'"

---

[19]      ARC cites a number of cases where courts have dismissed alter-ego claims because of insufficient allegations, without even attempting to analogize those cases to the claims by Microsoft in this action.  But all of the cited cases are distinguishable.  *See* Mot. 23–24 (citing *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 218–19 (5th Cir. 2000) (no evidence that parent financed subsidiary, the subsidiary did not receive all of its business from the parent, and the parent did not use the subsidiary's property or assets as its own); *Nat'l Gear and Piston, Inc. v. Cummin Power Sys., LLC*, 861 F. Supp. 2d 344, 375–76 (S.D.N.Y. 2012) (plaintiff did not "allege a single fact that addresses" the veil-piercing factors and even acknowledged in its contract with defendant that it was independent of the parent company); *Waite v. Schoenbach*, No. 10 Civ. 3439, 2010 U.S. Dist. LEXIS 115470, at *11 (S.D.N.Y. Oct. 29, 2010) ("plaintiff has not established that the wrong allegedly committed against him the breach of contract is related to any misuse of the corporate form"); *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 274–75 (S.D.N.Y. 2004) (subsidiary had nothing to do with the subject matter of the contract that was allegedly breached); *U.S. ex rel. Wilkins v. N. Am. Constr. Corp.*, 173 F. Supp. 2d 601 (S.D. Tex 2001) (no allegations that the parent controlled all operations of the subsidiary or the use of the corporate form to evade legal obligations)).

*Nebraskaland*, 2010 U.S. Dist. LEXIS 129013, at \* 16 (citing *Hewitt v. Helms*, 482 U.S. 755, 761 (1987)).

Judicial resolution of the disputes here will surely affect ARC's behavior towards Microsoft.  Not only is ARC a party to the Contract and bound by its terms, but the Contract also makes ARC liable for breaches by its affiliates and subsidiaries.  ARC exercises complete control over the plaintiffs in the ARC Actions and can force a withdrawal of those suits.  Compl. ¶¶ 23, 24.[20]  Furthermore, the Complaint seeks an injunction barring ARC or any of its affiliates from asserting patents acquired during the License Period that were not identified to Microsoft as being infringed, *id.* ¶¶ 39, 51(e), and a declaration that it is entitled to various damages and indemnification, *id.* ¶ 51(f).  ARC claims it had no obligation to classify Later-Acquired Patents as either Acacia Covenanted Patents or Acacia Licensed Patents by updating Sub-Exhibit A.1, and disputes its duty to pay damages to or to indemnify Microsoft in connection with the ARC Actions.  (Mot. 11–13.)  Resolution of these disputes will fix the meaning of the Contract and bring to an end ARC's abusive litigation practices through its subsidiaries, including the assertion of patents ARC failed to identify to Microsoft as those ARC believe to be infringed. By highlighting these disputes in its motion, ARC only confirms that Microsoft's declaratory judgment claim should not be dismissed.

---

[20]     ARC mistakenly relies on traditional patent declaratory judgment actions and argues that such claims cannot be brought against a parent corporation that does not own the patents at issue.  (Mot. 17.)  The cases cited are irrelevant because Microsoft does not seek a non-infringement or invalidity determination here, but instead seeks declarations of rights with respect to specific *contractual* provisions that bind ARC and its affiliates.  *See* Compl. ¶ 51(a)–(f).

## CONCLUSION

For the foregoing reasons, ARC's motion to dismiss Microsoft's complaint should be denied in its entirety.[21]

Dated: New York, New York.        Respectfully submitted,
      February 10, 2014

SIDLEY AUSTIN LLP          DECHERT LLP

Steven M. Bierman (sbierman@sidley.com)   By:  /s/ Andrew J. Levander
James D. Arden (jarden@sidley.com)         Andrew J. Levander
787 Seventh Avenue              (andrew.levander@dechert.com)
New York, New York 10019
T +1  212  839  5300             Matthew L. Mazur
F +1  212  839  5599               (matthew.mazur@dechert.com)
                           Gordon Sung (gordon.sung@dechert.com)
David T. Pritikin (dpritikin@sidley.com)   1095 Avenue of the Americas
Richard A. Cederoth (rcederoth@sidley.com) New York, NY  10036-6797
Ellen S. Robbins (erobbins@sidley.com)   T +1  212  698  3500
Nathaniel C. Love (nlove@sidley.com)     F +1  212  698  3599
One South Dearborn
Chicago, Illinois 60603
T +1  312  853  7000
F +1  312  853  7036

*Attorneys for Plaintiff Microsoft Corporation*

---

[21]    Should the Court determine nonetheless that any of Microsoft's claims should be dismissed, the dismissal should be without prejudice.  Given the continuing developments in the ARC Actions since the filing of the Complaint, Microsoft believes that it would be able to cure any deficiency identified by the Court.