UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
MICROSOFT CORPORATION,                :
        Plaintiff,                :   13 Civ. 8275 (PAC)
  -against-                         :
ACACIA RESEARCH CORPORATION,          :
        Defendant.                :
------------------------------------ X

# PLAINTIFF MICROSOFT CORPORATION'S BRIEF REGARDING APPLICATION OF THE COMMON INTEREST DOCTRINE

SIDLEY AUSTIN LLP

Richard A. Cederoth
Ellen S. Robbins
Nathaniel C. Love
Gwen Hochman Stewart
One South Dearborn
Chicago, Illinois 60603

DECHERT LLP

Andrew J. Levander
Matthew L. Mazur
1095 Avenue of the Americas
New York, New York 10036-6797

Frederick G. Herold
2440 W. El Camino Real, Suite 700
Mountain View, California  94040

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...................................................................................................................1

ARGUMENT ...........................................................................................................................1

      I.      ARC's Communications With Third Parties Are Relevant To This Case ...............1

      II.     The Common Interest Doctrine Does Not Shield From Discovery the Documents and Communications Microsoft Seeks ....................................................................4

            A.     ARC and the Third Parties Did Not Share "a Common Legal, Rather Than Commercial, Interest" During Their Negotiations........................................5

            B.     The Documents and Communications Microsoft Seeks Were Not "Made In The Course of Formulating a Common Legal Strategy".........................7

            C.     The Caselaw Cited In ARC's Letter Does Not Entitle ARC to Withhold the Discovery Microsoft Seeks. .................................................................9

CONCLUSION ......................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Diagnostics Sys. Corp. v. Symantec Corp.*,
 No. SA CV 06-1211 DOC, 2008 WL 9396387 (C.D. Cal. Aug. 12, 2008) ..............................9

*Egiazaryan v. Zalmayev*,
 290 F.R.D. 421 (S.D.N.Y. 2013) ....................................................................................................4

*Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*,
 284 F.R.D. 132 (S.D.N.Y. 2012) ................................................................................................4, 7

*HighPoint SARL v. Sprint NexTel*,
 No. 09-2269-CM-DJW, 2012 WL 234024 (D. Kan. Jan. 25, 2012) ........................................10

*HSH Nordbank AG N.Y. Branch v. Swerdlow*,
 259 F.D.R. 64 (S.D.N.Y. 2009) ..................................................................................................4, 9

*Hyatt v. State Franchise Tax Bd.*,
 105 A.D. 3d 186 (N.Y. App. Div. 2013) ...................................................................................5, 8

*In re Rivastigmine Patent Lit.*,
 No. 05 MD 1661 (BH/JCF), 2005 WL 2319005 (S.D.N.Y. Sept. 22, 2005) ........................5, 6

*Schaeffler v. United States*,
 No. 13 CIV. 4864 GWG, 2014 WL 2208057 (S.D.N.Y. May 28, 2014) ..................4, 5, 7, 10

*Shea v. Bonutti Research, Inc.*,
 No. 2:10-cv-615, 2013 WL 1386005 (S.D. Ohio Apr. 4, 2013) ..........................................9, 10

*SimpleAir, Inc. v. Microsoft Corp.*,
 No. 2:11-cv-416-JRG, 2013 WL 4574594 (E.D. Tex. Aug. 27, 2013) .....................................9

*Synopsys v. Ricoh Co.*,
 No. C-03-2289 MJJ (EMC), 2006 WL 2479109 (N.D. Cal. 2006) ..........................................7

*Thought, Inc. v. Oracle Corp.*,
 No. 12-cv-05601-WHO (MEJ), 2014 WL 3940294 (N.D. Cal. Aug. 11, 2014) ..................6, 8

**INTRODUCTION**

Plaintiff Microsoft Corporation ("Microsoft") respectfully submits this brief further explaining the common interest rule and why it does not shield from discovery Acacia Research Corporation's ("ARC") communications with third parties during negotiations and due diligence for the acquisition of patent rights.  At the time of those negotiations and due diligence investigations, ARC and the third parties were adversaries negotiating business deals—not aligned parties developing a joint legal strategy—so the common interest rule does not apply. ARC and/or the third parties should be required to produce all documents responsive to Microsoft's document requests and subpoenas to Microsoft without delay.

**ARGUMENT**

**I.    ARC's Communications With Third Parties Are Relevant To This Case**

As alleged in Microsoft's complaint (Dkt. No. 1), ARC breached the Contract and abused process when it orchestrated the filing of multiple lawsuits against Microsoft on October 1, 2013. Among other things, Microsoft alleged that ARC breached the Contract and abused process by claiming infringement of patents that ARC acquired during the term of the Contract but did not identify to Microsoft as patents that ARC believed Microsoft infringed (*see* Dkt. No. 1 at ¶¶ 32-36).  At the discovery conference on July 31, 2014, this Court granted Microsoft's request to compel discovery concerning such patents, including "All Documents, Communications, and Things concerning the patents owned or controlled by ARC that ARC believed Microsoft used as of 9/30/10, 9/30/11, 9/30/12, and on 9/30/13."  (Microsoft RFP No. 8; Dkt. No. 45.)

In its October 8, 2014 letter, Microsoft requested permission to file a further motion to compel discovery concerning patents acquired by ARC during the term of the Contract that ARC now says it believes Microsoft infringed, but were not identified to Microsoft as "Licensed Patents" as required by the Contract.  (Dkt. No. 74.)  In response to Microsoft's interrogatories,

ARC has identified 31 such patents and claimed that it "formed the belief that Microsoft uses or infringes" all 31 of these patents during the 35 days between August 27 and October 1, 2013— *i.e.*, just before ARC filed seven patent infringement suits against Microsoft.  *See* Decl. Matthew L. Mazur (hereinafter "Mazur Decl.") Ex. 1.

Through discovery, Microsoft has sought to test ARC's improbable claims about when (if ever) it formed its beliefs that Microsoft infringed these 31 patents.  In particular, Microsoft has sought communications concerning ARC's acquisition of the patents from third parties.  As is typical in negotiations over a potential acquisition of patent rights, ARC and the third parties discussed licensing targets.  Indeed, ARC's document production included a questionnaire received from a third party in February 2012, in which the third party contended that a Microsoft subsidiary infringed one of the 31 patents at issue, casting doubt on ARC's claim that it only formed the belief that Microsoft infringed in September 2013.[1]  (*See* Dkt. No. 74 Ex. 3.) However, although multiple ARC witnesses have testified that ARC routinely seeks information about potential infringers of the patents it acquires (*see* Mazur Decl. Exs. 2-4 (excerpts of Vella, Taub, and Lucas deps.)), and that Microsoft had been identified as a potential infringer of at least one other patent (*see* Dkt. No. 74 Ex. 4), ARC has produced no other comparable documents. Notably, a third party has produced correspondence with ARC in November 2010, in which the third party contended that Microsoft infringed the patent that was subsequently acquired by ARC.  (*Id.* at Ex. 2.)  ARC did not produce this document or list it on its privilege log; nor did it produce any documents reflecting its own belief that Microsoft infringed the patent.

On top of the demonstrated deficiencies in ARC's production, ARC has also endeavored to deprive Microsoft of this discovery by claiming that its communications with third parties are

---

[1] Conversely, a statement by the third party or ARC that it did *not* believe Microsoft infringes one or more of the patents at issue would be relevant to Microsoft's abuse of process claim.

protected by a "common interest privilege." On its privilege log, ARC listed 93 documents withheld pursuant to a "common interest privilege." In addition, ARC has asserted a "common interest privilege" over documents Microsoft subpoenaed from third parties. These assertions have had the effect of preventing or delaying the production of critical discovery to Microsoft.

First, ARC objected to the production of documents by Coller Capital, Inc. ("Coller") concerning patents ARC purchased from Coller in 2011. Although Coller was ready to produce the documents, at ARC's insistence Microsoft agreed to allow ARC to review them first, and ARC withheld 73 documents. ARC then abandoned its "common interest privilege" objection and produced the documents the night before the October 15, 2014 discovery conference.

Second, ARC objected to the production of documents by StarNet Communications Corp. ("StarNet") concerning a patent exclusively licensed to ARC in 2010. StarNet informed Microsoft that ARC and StarNet had discussed in 2010 whether Microsoft could be sued for infringing the patent, but it said that ARC's lawyers had taken the position that communications between ARC and StarNet are protected by the "common interest doctrine." StarNet recently retained an attorney who also represents an ARC subsidiary, Computer Software Protection LLC (which sued Microsoft on October 1, 2013), and has yet to produce a single document in response to Microsoft's subpoena.

Third, seven of the third parties to whom Microsoft issued subpoenas in early September are now represented by ARC's counsel in this matter. All have objected to Microsoft's requests for communications with ARC based, in part, on the "common interest privilege." Although some of these third parties recently started to produce some documents on a "rolling" basis, none has completed its production (for example, one produced only a single, 3-page document) and none has provided a privilege log. At the discovery conference on October 15, 2014, ARC's

lawyers told the Court that they hoped to complete the third party productions this week, "assuming that we continue to get the rest of the documents from these third parties," whom they had been "imploring to finish complying with Microsoft's subpoenas." In response, the Court stated that it found this explanation for the delay "a little bit hard . . . to swallow" and that ARC's lawyers "shouldn't be supplicants here." Tr. 10/15/14 at p. 45.

At the October 15 conference, Microsoft requested an Order: (1) requiring ARC and the third parties represented by ARC's lawyers to complete their document productions, including privilege logs, by Monday, October 20, 2014; and (2) striking down ARC's meritless claims of a "common interest privilege" over communications with third parties during the period when ARC was in the process of acquiring patent rights from those third parties. At the conclusion of the conference, the Court requested further briefing on the common interest issue.

## II.     The Common Interest Doctrine Does Not Shield From Discovery the Documents and Communications Microsoft Seeks

The common interest doctrine "is not a separate privilege," *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 433 (S.D.N.Y. 2013), and "is not an independent source of privilege or confidentiality." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132, 139 (S.D.N.Y. 2012). Rather, it is "an exception to the general rule that disclosure of confidential, privileged material to a third party waives any applicable privilege." *Id.* at 139. As the party attempting to invoke the doctrine, ARC bears the burden of proving both that the underlying documents or communications were privileged in the first place, and also that the privilege was not waived when they were disclosed to third parties. *See, e.g.*, *HSH Nordbank AG N.Y. Branch v. Swerdlow*, 259 F.D.R. 64, 70 (S.D.N.Y. 2009). To do so, ARC must show both that: (1) the parties communicating had "a common legal, rather than commercial, interest"; and (2) "the disclosures [we]re made in the course of formulating a common legal strategy." *E.g.*, *Schaeffler*

4

*v. United States*, No. 13 CIV. 4864 GWG, 2014 WL 2208057, at *8 (S.D.N.Y. May 28, 2014). "This showing must be based on competent evidence, such as affidavits, deposition testimony or other admissible evidence." *Id.*

### A. ARC and the Third Parties Did Not Share "a Common Legal, Rather Than Commercial, Interest" During Their Negotiations

First, ARC cannot show that it had "a common legal, rather than commercial, interest" with the third parties during their negotiations. *See, e.g.*, *Schaeffler*, 2014 WL 2208057, at *8. Courts have found a common legal interest where parties were actual or potential co-parties to a litigation, or have "formed a coordinated legal strategy." *Id.* The common interest rule, however, "does not encompass a joint business strategy which happens to include as one of its elements a concern about litigation." *Id.* Similarly, a "shared desire to succeed in an action does not . . . rise to the level of a common legal interest," and "the mere assertion of a common legal interest in a written agreement cannot create such an interest." *Id.* at *10, *12. Finally, "it is not sufficient for the party seeking the protection of the common interest doctrine merely to show that a unified legal interest theoretically existed. Rather, it must also demonstrate that the parties demonstrated cooperation in developing a common legal strategy." *In re Rivastigmine Patent Lit.*, No. 05 MD 1661 (BH/JCF), 2005 WL 2319005, at *2 (S.D.N.Y. Sept. 22, 2005).

Here, ARC and the third parties had *adverse* interests during the negotiations and the due diligence process, and any common interest they shared was *commercial*, not legal. *See Hyatt v. State Franchise Tax Bd.*, 105 A.D. 3d 186, 205–06 (N.Y. App. Div. 2013) ("Communications regarding Hyatt's licensing business with Philips are not legal in nature, but commercial . . . . [and] are not protected by the attorney-client privilege. Furthermore, communications regarding the negotiation of Hyatt's licensing agreement with Philips would not be protected by the common-interest privilege because Hyatt and Philips had divergent interests in making the

deal.") (internal citations omitted). As in *Hyatt,* ARC and the third parties were engaged in due diligence and negotiating the transfer of patent rights—a business transaction. ARC has not presented any evidence that it was working with the third parties to develop a joint legal strategy during the negotiations and due diligence. *See In re Rivastigmine*, 2005 WL 2319005, at *4 (compelling production of communications between Novartis and investors in patent assets where Novartis "has not demonstrated that, as a practical matter, it ever pursued a common legal strategy with Yissum and the inventors").

Notably, just two months ago, a court rejected ARC's invocation of the common interest doctrine in a similar situation. In *Thought, Inc. v. Oracle Corp.*, No. 12-cv-05601-WHO (MEJ), 2014 WL 3940294 (N.D. Cal. Aug. 11, 2014), a patent infringement action, the court compelled discovery of communications between the plaintiff and non-practicing entities ("NPEs") that considered buying the plaintiff's patents, including ARC. *Id.* at *4. The Court found:

> [T]he dominant interests between Thought and the NPEs were deciding whether to become business partners in monetizing the patent portfolio. As the negotiations were not made in an effort to formulate a joint defense, this is a non-privileged business decision. This is true even if the correspondence had potential relevance to a hypothetical litigation—such interest is secondary to the immediate business decision of whether to purchase the patents. The interest of the parties were thus commercial and not eligible for common-interest privilege.

*Id.* at *3 (internal citations omitted). So too here, the interest between ARC and the third parties in negotiating the purchase of patent rights was commercial and not eligible for protection under the common interest rule. Any communications between the parties regarding the patents, including the due diligence, did not relate to legal strategy or pending litigation, but rather to the assets being purchased.

ARC argues it "has a continuing common legal interest" with some third parties because they "have an ongoing interest in the enforcement of their patents in licensing or litigation by virtue of being entitled to a portion of future revenues from licensing of those patents." (Dkt.

6

No. 91 at 2.)  First, "being entitled to a portion of future revenues" is merely a commercial interest, not a legal one, and courts have rejected attempts to equate this type of financial relationship to a common legal interest.  *See, e.g.*, *Fireman's Fund*, 284 F.R.D. at 141 (no common interest where party failed to prove that disclosures were made "in the course of formulating a common legal strategy," and merely argued that the third party reinsurer "follows the fortunes" and liabilities of the party).  Second, the "common legal interest" ARC identifies (even if it could apply) would arise only *after* the signing of an agreement and completing due diligence.  ARC has not and cannot show that it shared "a common legal, rather than commercial, interest," *see, e.g.*, *Schaeffler*, 2014 WL 2208057 at *8, with the third parties during negotiations or due diligence.

### B. The Documents and Communications Microsoft Seeks Were Not "Made In The Course of Formulating a Common Legal Strategy"

ARC also has not shown and cannot show that its communications with the third parties were "made in the course of formulating a common legal strategy," as required under the common interest rule.  *See, e.g.*, *Schaeffler*, 2014 WL 2208057 at *8.  The communications were made to further business negotiations about the potential sale of patent rights; they were not made in order to formulate a common legal strategy for litigation that did not yet exist.

The common interest doctrine protects *only those communications made for the purpose of furthering a common legal strategy*, and courts refuse to apply the rule to communications made in furtherance of a business purpose.  *See, e.g.*, *Fireman's Fund*, 284 F.R.D. at 141 ( "Max has not proven, or even argued, that it disclosed otherwise privileged material to Arch Re 'in the course of formulating a common legal strategy' or 'for the purposes of obtaining legal advice from' Arch Re. . . .  Max has failed to establish that it shares a common legal interest with Arch Re"); *Synopsys v. Ricoh Co.*, No. C-03-2289 MJJ (EMC), 2006 WL 2479109 (N.D. Cal. 2006)

7

(party "failed to demonstrate that the documents at issue were designed to *further* that common interest" and "fails to explain how documents related to negotiations about transferring and the actual transferring of patent rights were in furtherance of the common interest in enforcement of the patents"); *Hyatt*, 105 A.D. at 205 (declining to "expand the common-interest privilege to include non-litigation-related communications between a patent holder and counsel for an exclusive licensee").

The California court that recently rejected ARC's attempt to shield patent-purchase negotiations under the common interest doctrine addressed this issue and rejected the argument ARC advances here. *See Thought*, 2014 WL 3940294, at *3 (observing that in the context of "dual-purpose communications," *i.e.*, documents which serve both legal and business purposes, the privilege applies only if the "*primary or predominant* purpose of the attorney-client consultation is to seek legal advice or assistance"). That court stated: "*The decision to purchase (and therefore to sell) patents is indisputably related to a business purpose.*" *Id.* (emphasis added). The common interest rule did not apply because "the parties' communication appears to be primarily for business, not litigation, functions." *Id.*

In *Diagnostics Sys. Corp. v. Symantec Corp.*, No. SA CV 06-1211 DOC (ANx) 2008 WL 9396387 (C.D. Cal. Aug. 12, 2008), the court similarly rejected ARC's attempt to avoid discovery of documents regarding its evaluation of patents for purchase, including potential targets against whom such patents could be asserted. Citing extensive deposition testimony from ARC CEO Matthew Vella (also deposed in this case, *see* Mazur Decl. Ex. 2), the court found that "Acacia's business is to acquire rights and patents and monetize them," and that "evaluating patents to acquire and targets to assert those patents against . . . are clearly business functions,

and documents resulting from these functions cannot be categorized in sweeping assertions of privileges and protection." 2008 WL 9396387, at *5–6 (internal quotation marks omitted).

      C.      **The Caselaw Cited In ARC's Letter Does Not Entitle ARC to Withhold the Discovery Microsoft Seeks**

The authority cited in ARC's response to Microsoft's pre-motion conference letter does not entitle ARC to the protections of the common interest doctrine. (*See* Dkt. No. 91.) *SimpleAir, Inc. v. Microsoft Corp.*, No. 2:11-cv-416-JRG, 2013 WL 4574594 (E.D. Tex. Aug. 27, 2013), does not even mention the common interest rule, and instead resolved a fact-specific question of whether attorney-client privilege was preserved as to certain documents that accompanied certain patent assets through multiple transfers of ownership, in a chain of title that included bankruptcy proceedings. *See id.* at *3. *HSH Nordbank* (cited in Section II, *supra*) does not support ARC's position either: The court ruled that the recipient of a communication protected by the common interest rule need not be an attorney, and that the enforcement of obligations under an already-existing contract may include a legal interest. *See* 259 F.D.R. at 71–73. The court did *not* hold that the doctrine applies to pre-contractual due diligence or negotiations. To the contrary, it emphasized that the common interest rule does not "encompass a joint business strategy which happens to include as one of its elements a concern about litigation," *id.* at 71 (internal quotation marks omitted), and that the burdens of establishing both the existence of an underlying privilege and the applicability of the common interest rule are on the party asserting protection. *Id.* at 70. ARC has not met these burdens.

      *Shea v. Bonutti Research, Inc.*, No. 2:10-cv-615, 2013 WL 1386005 (S.D. Ohio Apr. 4, 2013),[2] ordered the return of documents containing legal analysis of whether BRI's patent claims

---

[2] It is unclear which decision ARC's reference to *Shea* is intended to cite, because its citation is incomplete and inaccurate. (See Dkt. No. 91 at 2.) Microsoft has addressed the decision that

9

covered certain products, shared between BRI and ARC in connection with the negotiation of ARC's purchase of patents and licenses from BRI. This decision, however, is from outside the Second Circuit, and it applied a different legal standard from the one that controls this case. The *Shea* court performed its analysis under the assumption that common interest protection applies to a communication "as long as it deals with a matter on which parties have agreed to work toward a mutually beneficial goal, even if those parties are in conflict on some points." *Id.* at *2. By contrast, the law in the Southern District of New York requires ARC to show that: (1) that the parties communicating had "a common legal, rather than commercial, interest"; and (2) "the disclosures [we]re made in the course of formulating a common legal strategy." *E.g.*, *Schaeffler*, 2014 WL 2208057, at *8. *HighPoint SARL v. Sprint NexTel*, No. 09-2269-CM-DJW, 2012 WL 234024 (D. Kan. Jan. 25, 2012), also applied out-of-circuit authority, and the documents at issue there were exchanged in part to "formulate a legal strategy regarding infringement and validity and other patent claims." *See id.* at *6–7, 9. These out-of-circuit decisions do not control the outcome in this case.

## **CONCLUSION**

For all of the foregoing reasons, Microsoft respectfully requests an order overruling ARC's privilege claims over communications between ARC and third parties during the negotiation of agreements to assign or acquire patent rights (including the associated due diligence process) and requiring ARC (or its counsel which also represents various third parties) to produce all such documents without further delay.

---

ARC appears to have referenced, but Microsoft reserves the right to supplement its brief in the event ARC identifies a different decision.

| | |
|---|---|
| Dated:  New York, New York<br>October 21, 2014 | Respectfully submitted,<br><br>By:  */s/  Andrew J. Levander* |
| Richard A. Cederoth<br>Ellen S. Robbins<br>Nathaniel C. Love<br>Gwen Hochman Stewart<br>SIDLEY AUSTIN LLP<br>One South Dearborn<br>Chicago, Illinois 60603<br>Tel:  (312) 853-7000<br>Fax:  (312) 853-7036<br>rcederoth@sidley.com<br>erobbins@sidley.com<br>nlove@sidley.com<br>gstewart@sidley.com | Andrew J. Levander<br>Matthew L. Mazur<br>DECHERT LLP<br>1095 Avenue of the Americas<br>New York, New York 10036-6797<br>Tel: (212) 698-3500<br>Fax: (212) 698-3599<br>andrew.levander@dechert.com<br>matthew.mazur@dechert.com<br><br>Frederick G. Herold<br>DECHERT LLP<br>2440 W. El Camino Real, Suite 700<br>Mountain View, California  94040<br>Tel: (650) 813-4930<br>Fax: (650) 813-4848<br>frederick.herold@dechert.com |

*Attorneys for Plaintiff Microsoft Corporation*