**STRADLING YOCCA CARLSON & RAUTH, P.C.**
660 NEWPORT CENTER DRIVE, SUITE 1600
NEWPORT BEACH, CA 92660-6422
SYCR.COM

NEWPORT BEACH
RENO
SAN DIEGO
SACRAMENTO
SAN FRANCISCO
SANTA BARBARA
SANTA MONICA

MARC J. SCHNEIDER
949.725.4137
MSCHNEIDER@SYCR.COM

October 27, 2014

**Via ECF**

The Honorable Paul A. Crotty
United States District Court
500 Pearl Street
New York, New York 10007

    Re:    <u>*Microsoft Corp. v. Acacia Research Corp.*, 13 Civ. 8275 (PAC)</u>

Dear Judge Crotty:

    This letter responds to Microsoft's Supplemental Brief of October 21, 2014. Despite having now had two chances to brief this dispute, Microsoft's Supplemental Brief still fails to address the actual issue at hand—that is, the application of common interest protection to *specific* documents of Acacia and its partners. First by refusing to identify or discuss any specific documents to which the privilege is allegedly inapplicable, Microsoft has failed to meet its initial burden of identification of the challenged documents. Further, by simplistically analyzing all of Acacia's discrete documents collectively, Microsoft improperly conflates documents relating to contract negotiations (on which no common interest is claimed) with documents relating to Acacia and its partners' shared preparation for litigation and joint legal strategy. Given these failings, Microsoft's request to indiscriminately pierce Acacia's common interest communications with its patent licensing partners should be denied.

    Microsoft argues that it is Acacia's burden to establish its common interest privilege. Supp. Brief, p. 4. However, Acacia is required to make no showing until Microsoft meets its *initial* burden of identifying the particular documents that it challenges. *ECDC Envtl. L.C. v. N.Y. Marine & Gen. Ins. Co.*, 1998 WL 614478, *3-4 (S.D.N.Y. 1998) ("[T]he withholding party's obligation to produce evidence to sustain its assertions of privilege should be limited to those elements of the privilege or

protection challenged by the adversary.").  Here, Microsoft has received privilege logs from Acacia (Treska Decl., ¶3) and, as of today, at least six of the seven third parties that Stradling represents.  If Microsoft disputes particular claims of privilege as to particular documents, the proper procedure is to challenge specific entries on Acacia's log, allowing for a fair and complete discussion of the individualized circumstances for the claim of common interest.  Instead, by indiscriminately attacking all of Acacia's claims of privilege collectively as a general matter, Acacia and the Court are left to guess which documents Microsoft is actually challenging, making it impossible to substantively address Microsoft's complaints.

In its Supplemental Brief, Microsoft relies heavily on *Schaeffler v. United States*, 2014 U.S. Dist. LEXIS 72710 (S.D.N.Y. May 28, 2014) —a dispute involving an IRS administrative subpoena seeking an accounting firm's tax advice that was shared among a corporate entity and a consortium of banks funding a transaction—to support its claims that none of the communications between Acacia and its patent partners are subject to the common interest doctrine.  The factual scenario is far removed from the issues at hand.  In *Schaeffler*, a corporation and a bank consortium were negotiating a debt refinancing.  *Id.* at *26-28.  During the course of the negotiation, the bank requested the corporation share tax advice it received from its accountants for the purpose of analyzing the economic impact that potential tax liability might have on the corporation, including the potential for insolvency.  *Id.*  Based on these facts, the *Schaeffler* court reasoned that "the two parties' shared interest in [the corporation's] tax liability was, in the end, an economic one: namely, a desire that the transactions receive favorable tax treatment . . . so that the [corporation] could service its debt to the bank consortium."  *Id.* at *27. This has nothing to do with the common interest between Acacia and its patent partners.

Indeed, in the factual context of *this* case, the *Schaeffler* decision actually supports Acacia's position.[1]  The instant case involves precisely the scenario expressly distinguished by the *Schaeffler* court, *i.e.*, "[t]he classic situation where parties share a common legal interest [] where they are or may 'potentially become, co-parties to a litigation.'"  *Id.* at *28 (citing *In re Subpoena Duces Tecum Served on N.Y. Maritime and Gen. Ins. Co.*, 1997 U.S. Dist. LEXIS 14730 (S.D.N.Y. 1997)).  In fact, Microsoft's Supplemental Brief likewise acknowledges (p. 5) that a common legal interest can exist where "parties were actual or potential co-parties to a litigation."  Of course, that scenario is precisely the case here, where Acacia and its partners expressly anticipated cooperating in litigation and shared privileged materials to further their common interest, a common interest that was memorialized in written agreements, in generating revenues that they would then share between the two of them.  *See* Exhs. A-J to Acacia's Supp. Brief and Treska Decl., ¶¶ 5-6.  In fact, *Schaeffler* goes even further and acknowledges that the common interest rule extends not only to instances where entities are co-parties in litigation, but also to instances "where parties are formulating 'a coordinated legal strategy.'"  *Schaeffler*, 2014 U.S. Dist. LEXIS 72710 at *28.  Again, this is precisely the instant case, where Acacia formulated legal strategies in coordination with its partners and only documents and communications shared in furtherance of that common interest are at issue.  Treska Decl., ¶¶ 5-6.

Microsoft's Supplemental Brief also blurs the distinction between business communications— concerning, for example, deal terms, which Acacia *has* produced—and communications reflecting Acacia and its patent partners' coordinated legal strategy.  For example, Microsoft argues "ARC and [its partners] had *adverse* interests during the negotiations and the due diligence process."  Supp. Brief., p. 5.  As set forth in Acacia's Supplemental Brief, negotiations and patent analysis are two distinct efforts and cannot be treated the same.  With regard to negotiations, Acacia does not dispute that its adversarial

---

[1]  Microsoft also relies on *Fireman's Fund Ins. Co. v. Greate Am. Ins. Co.*, 284 F.R.D. 132 (S.D.N.Y. 2012), which rejected a categorical rule finding a common interest privilege between reinsurance companies and insurance companies.  This decision has no bearing on the instant case.

business negotiations concerning deal terms and other business issues are not protected under the common interest doctrine.  Such documents have already been produced to Microsoft and, in fact, the very business agreements between Acacia and its partners were attached as Exhibits to Acacia's Supplemental Brief.  With regard to legal analysis and litigation strategy, however, Acacia and its patent partners do "share a common legal interest" in that they may "potentially become [] co-parties to a litigation" and shared privileged communications for the purpose of "formulating 'a coordinated legal strategy.'"[2]  *Schaeffler*, 2014 U.S. Dist. LEXIS 72710 at *28; Treska Decl., ¶¶ 5-6.  For example, Acacia's legal analysis and pre-litigation planning involved the parties' sharing of documents reflecting the analyses or advice of legal counsel, such as claim charts and analyses of potentially infringing products, validity and prior art analyses.  Treska Decl., ¶¶ 5-6.  In these circumstances, documents and communications shared among Acacia and its respective patent partner reflecting the "formulation" of a "coordinated legal strategy," such as claims charts, infringement analyses, validity analyses, and patent prosecution strategies should undoubtedly be protected by the common interest doctrine.  *Schaeffler*, 2014 U.S. Dist. LEXIS 72710 at *28; Treska Decl., ¶¶ 5-6.

     The decisions Acacia cited in its initial brief are apposite to the facts here.  Each of the cases holds that attorney-client privilege and work-product concerning draft claims charts, infringement analyses, *et cetera*, are not waived when shared with third-parties in factually analogous instances.  For example, *In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1389-91 (Fed. Cir. 1996) upheld an assertion of common interest between an inventor and potential patent licensee even though there was some "overlap of a commercial and a legal interest" during the negotiation period.  *MobileMedia Ideas LLC v.*

---

[2] Microsoft also cites *In re Rivastigmine Patent Litig.*, 2005 U.S. Dist. LEXIS 20851 (S.D.N.Y. Sep. 22, 2005) for the proposition that a common interest requires "cooperation in developing a common legal strategy."  (Supp. Brief, p. 5.)  But this is precisely the case here.  Acacia's patent partners shared a common legal interest with Acacia with regard to possible joint patent litigation and in sharing any revenues generated by these enforcement efforts.  Among other things, the patent partners and Acacia cooperated together in developing infringement contentions, validity arguments, and other legal strategy relating to patent infringement litigation.  *See* Treska Decl., ¶ 6.

Page Five

*Apple, Inc.*, 890 F. Supp. 2d 508 (D. Del. 2012) and *Rembrandt Techs., L.P. v. Harris Corp.*, 2009 Del. Super. LEXIS 46, Mem. Op., C.A. No. 07C-09-059-JRS (Del. Ch. Feb. 12, 2009) similarly hold that the common interest doctrine protects patent analyses shared between parties whose agreement contemplated the "enforcement of [] patents." *MobileMedia*, 890 F. Supp. 2d at 517; *Rembrandti,* 2009 Del. Super. LEXIS 46, at *26; *see also High Point Sarl v. Sprint Nextel Corp*., 2012 U.S. Dist LEXIS 8435, at *15-33 (D. Kan. Jan. 25, 2012) (same).

For the reasons set forth herein and in Acacia's Supplemental Memorandum, Microsoft's generic request for a blanket ruling should be denied. Rather, the Court should uphold Acacia's claim of common interest in specific documents shared with its patent partners to formulate litigation strategy.

          Respectfully submitted,

          */s/ Marc. J. Schneider*
          Marc J. Schneider
          Litigation Shareholder
          STRADLING YOCCA CARLSON & RAUTH, P.C.