UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-17-14
```

------------------------------------------------------------X

MICROSOFT CORPORATION,                     :
                                           :
                        *Plaintiff*,       :          13 cv 8275 (PAC)
                                           :
        -against-                          :
                                           :          **OPINION & ORDER**
ACACIA RESEARCH CORPORATION,               :
                                           :
                        *Defendant*.       :
                                           :
------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Microsoft seeks an order compelling the production of Defendant Acacia's communications with third parties who sold patents to Acacia. Acacia's assertion of the common interest privilege to justify its refusal to produce the requested documents is DENIED. Acacia is directed to comply with Microsoft's discovery request.

## BACKGROUND

Acacia is a non-practicing entity which purchases patents for subsequent licensing to third parties. As part of its acquisition process, Acacia solicits information regarding possible infringements from the sellers. *See e.g.*, ECF No. 74, Ex. 2 (a patent questionnaire containing the following question: "Does [the patent holder] know of or suspect infringement of these Patents? Who do you think infringes/where/how?"). After the parties sign the patent purchasing contract, a period of due diligence commences. Acacia claims that during this period, it produces various legal documents and legal analyses, which are covered by the attorney-client privilege. Acacia,

1

however, shares these documents with the patent sellers Acacia is negotiating with. Notwithstanding its disclosure to third party sellers, Acacia argues that its attorney-client privilege remains intact due to the common interest doctrine. Acacia's argument is rejected: disclosures to the patent sellers waives the attorney-client privilege and the common interest doctrine is not applicable to Acacia's commercial relationship with the sellers.

## DISCUSSION

### I.      Legal Standards

"The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *U.S. v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011).[1] Typically, disclosing information protected under the attorney-client privilege to third parties waives the privilege. *In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973). There is, however, an important exception when third the party recipient shares a common legal interest. To trigger the application of this doctrine and preserve the privilege, the disclosing party must demonstrate that (1) the parties had a common legal, rather than commercial, interest; and (2) the disclosures were made in the course of formulating a common legal strategy. *Schaeffler v. U.S.*, No. 13 CIV. 4864 GWG, 2014 WL 2208057, at *8 (S.D.N.Y. May 28, 2014). The burden of establishing the privilege falls on the party asserting it, *see Doe (In re Grand Jury Proceedings)*, 219 F.3d 175, 182 (2d Cir. 2000), and must be based on "competent evidence, such as affidavits, deposition testimony, or other admissible evidence." *Schaeffler*, 2014 WL 2208057, at *8. Moreover, "the Second Circuit has warned that expansions of the attorney-client privilege under the common

---

[1] See C. Evan Stewart, *Attorney-Client Privilege: Misunderestimated or Misunderstood?*, N.Y. L.J., Oct. 20, 2014, for a convenient, and expert, explanation of the attorney-client privilege.

interest rule should be 'cautiously extended.'" *In re F.T.C.*, No. M18-304 (RJW), 2001 WL 396522, at *4 (quoting *United States v. Weissman*, 195 F.3d 96, 100 (2d Cir. 1999)).

## II.   Application

### A. Attorney Client Privilege

Both parties agree that the materials sought in discovery—comprised of draft claim charts and pre-suit analyses—reflect confidential legal advice between Acacia and its legal team. *See In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007).

### B. Common Interest Doctrine

Acacia argues that the materials remain privileged, notwithstanding their disclosure to third party sellers, because a common legal interest exists and because the disclosures were made in the course of formulating a common legal strategy. The argument is rejected. Acacia is pursuing its own commercial interest in attempting to ascertain whether the patents at issue are fertile with the possibility of infringement.

Acacia points to (i) the privilege clause contained in each patent sale contract,[2] (ii) the timing of the disclosure, and (iii) the royalty entitlements. The privilege clause, Acacia argues, provides that the disclosure of privileged information between Acacia and the seller "in furtherance of their common legal interest" does not diminish or waive attorney-client privilege. *See* Ex. A, § 8.2. But mere recital is hardly conclusive or compelling on whether such an interest exists. *Schaeffler*, 2014 WL 2208057, at *12.

While the disclosures were made during the due diligence period—after the parties had

---

[2] Ten patent sale contracts are at issue here, which cover Acacia's agreements with the following patent sellers: (1) Silicon Image, Inc.; (2) Rambus Delaware LLC; (3) Borland Software Corporation; (4) Teleshuttle Tech2, LLC; (5) Telecommunication Systems, Inc.; (6) Patent Monryization Accociates, L.P.; (7) Mind's-Eye-View, Inc.; (8) Starnet Communications Corporation; (9) SK Telecom Co. Ltd; and (10) Bluetie, Inc. Acacia's contract with Silicon Image, Inc. ("Ex. A") was provided to the Court and Acacia state that the nine other contracts contain "the identical or substantially similar provisions." ECF No. 98. Acacia's law firm represents the sellers numbered (1) through (7). Not surprisingly, each entity agrees with Acacia's position.

signed an agreement—in reality that timing does not establish a common interest. The disclosures were not contingent on the signed agreement; they were contingent on Acacia finding satisfactory information during the investigation process, otherwise "(i) [Acacia] shall have no payment obligations or liability to [the seller]; and (ii) this Agreement shall automatically terminate upon completion of the Investigation period." Ex. A, § 1.3. Therefore, a common legal interest could only exist after the disclosures were made because that is when the parties' agreement took effect in reality.

Finally, Acacia claims that a common legal interest exists "in licensing or litigation by virtue of being entitled to a portion of future revenues from licensing of those patents." ECF No. 91, 2. While the contracts do provide for royalty payments arising from successful infringement actions, each third party seller assigns to Acacia:

> the entire right, title, and interest in and to the Patents, including without limitation, all rights of [the seller] to sue for past, present, and future infringement of the Patents, including the right to collect and receive any damages, royalties, or settlements for such past, present and future infringements, all rights to seek and obtain injunctive or other equitable relief, and any and all causes of action relating to any of the inventions or discoveries described in the Patents, and all good will in connection with the foregoing.

Ex. A, § 1.1.

The sellers do not retain any legal interest in the patents—let alone a legal interest "common" with Acacia. The royalty entitlements are merely a form of consideration employed by Acacia when purchasing patents. Such entitlements are commercial in nature and do not constitute a legal interest. Accordingly, Acacia has failed to demonstrate a common legal interest with the patent sellers.

Similarly, no common legal strategy existed between the Acacia and the patent sellers. In order to establish a common legal strategy, "'[w]hat is important is not whether the parties

theoretically share similar interests but rather whether they demonstrate actual cooperation toward a common legal goal.'" *In re F.T.C.*, 2001 WL 396522, at *3 (quoting *North River Insurance Co. v. Columbia Casualty Co.*, No. 90 Civ. 2518, 1995 WL 5792, at *4 (S.D.N.Y. Jan. 5, 1995)). Here, Acacia does not formulate a legal strategy with any of the patent sellers. Instead, Acacia, "in its sole judgment decide[s] to institute enforcement actions . . . [and] reserves the sole right to select counsel, direct the litigation, and to negotiate and determine the terms of any settlement or other disposition." Ex. A, § 6.1. The terms of the contracts, therefore, preclude any common legal strategy and provide Acacia with total discretion in prosecuting infringements.

## CONCLUSION

The communications between Acacia and the third party sellers are not protected by a common interest privilege. Such materials are, therefore, discoverable and Acacia is directed to comply with Microsoft's request.

Dated: New York, New York           SO ORDERED
November 17, 2014

_____
PAUL A. CROTTY
United States District Judge