UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                      :
MICROSOFT CORPORATION,                                :
                                                      :
                    Plaintiff,                        :
                                                      :
            v.                                        :        13 Civ. 8275 (PAC)
                                                      :
ACACIA RESEARCH CORPORATION,                          :        **AMENDED COMPLAINT**
                                                      :
                    Defendant.                        :
                                                      :
-------------------------------------------------------------X

Microsoft Corporation ("Microsoft"), by and through its undersigned counsel, alleges the

following claims for relief against Defendant Acacia Research Corporation ("ARC"):

**Nature of this Action**

1.      ARC is a publicly held company that neither develops nor sells any products.

Instead ARC's business is acquiring control over patents and then threatening litigation, forcing

ARC's targets to choose between a quick payment to ARC or the costs and expenses associated

with protracted litigation.

2.      According to its public securities filings, ARC's "patent licensing and

enforcement often begins with the filing of patent enforcement litigation" or "at least the threat

of legal action."  A recent study found that ARC filed more patent infringement actions than any

other non-practicing entity ("NPE") in 2013.

3.      In 2010, Microsoft paid ARC a substantial amount of money in exchange for

immunity from suit on all patents then controlled by ARC and in exchange for ARC's promises

to limit any potential liability Microsoft might have in the future for any patents over which ARC

acquired control during the next three years.  Pursuant to this 2010 agreement, ARC also promised to tell Microsoft whether ARC believed Microsoft infringed any newly acquired patents so that Microsoft would have adequate time to make an informed decision about whether to enter into another agreement for additional protections from newly acquired patents.

4.      In fact, it is now clear that ARC has engaged in a pattern of duplicitous and bad faith conduct in relation to Microsoft.  Using shell companies, sham contracts, and frivolous litigation, ARC has repeatedly breached its contractual obligations to Microsoft and engaged in other outrageous conduct.

5.      This conduct goes back to the very inception of the 2010 agreement, when ARC purposely delayed closing on its acquisition of a patent (on which it has now sued Microsoft), for the purpose of preserving the ability to later use that patent as an extortion tool against Microsoft.  Then, in the three years after the agreement was signed, ARC represented to Microsoft that Microsoft did not infringe so much as one of the thousands of patents that ARC acquired in that period, only to later claim infringement of some of these very same patents in a bad faith attempt to extract additional payments from Microsoft.

6.      Finally, ARC filed eight patent infringement lawsuits (seven on the same day), in four different jurisdictions around the country for the improper purpose of multiplying the expenses Microsoft would incur to defend against them.  All of the lawsuits sought damages prohibited by the agreement between Microsoft and ARC; all involved patents that were subject to ARC's notice obligations under the agreement; and some were facially infirm for reasons ARC knew at the time it filed them.  In fact, ARC has already been forced voluntarily to withdraw four of its original seven suits.

7.     ARC's course of conduct involved breaches of its contract with Microsoft, violated the implied covenant of good faith and fair dealing, and amounted to abuse of process. Microsoft seeks damages and declaratory and injunctive relief in order to put an end to ARC's abuses.

**The Parties**

8.     Microsoft is a Washington corporation.  Its principal place of business is in Redmond, Washington.

9.     Microsoft is the worldwide leader in software, services, and solutions.  Microsoft has more than 125,000 full-time employees, almost half of them in engineering, including research and development.

10.     ARC is a Delaware corporation.  Its principal place of business is in Newport Beach, California.

11.     ARC is an NPE; neither ARC nor its subsidiaries engages in research or development, invents any new products, or makes or sells any products or services.

**The September 30, 2010 Agreement**

12.     On September 30, 2010, Microsoft and ARC signed an "Amended and Restated Confidential Option Agreement" (the "Option Agreement").  At the same time, Microsoft paid a substantial fee to ARC to exercise Microsoft's option to obtain a license, covenant and release under the "Portfolio License and Covenant-Not-To-Sue Addendum" (the "License and Covenant Addendum") appended to that Option Agreement.  A true and correct copy of the Option Agreement and License and Covenant Addendum (collectively, "the Contract") is attached to

this Amended Complaint as Exhibit 1 (under seal) and incorporated in full into this paragraph. The Contract covers ARC and all ARC affiliates, which include ARC's LLC subsidiaries.

13.     The Contract:  (a) forever immunizes Microsoft against any claim of infringement at any time of any patent owned or controlled by ARC or its subsidiaries (except for certain excluded patents not relevant here) as of September 30, 2010; and (b) forever immunizes Microsoft against any claim for infringement arising before October 1, 2013 as to any patents acquired by ARC or its subsidiaries after September 30, 2010.

14.     The Contract was "intended to resolve all patent disputes that [ARC or its affiliates] currently ha[d] with respect to [Microsoft]."  And ARC agreed "never to commence, assist in any way, prosecute or cause, permit or advise to be commenced or prosecuted against [Microsoft] any action or proceeding arising out of the [matters as to which ARC provided a release]."  ARC also promised to indemnify Microsoft and hold it harmless against any assertion of infringement prohibited by the Contract.

15.     The patents owned or controlled by ARC as of September 30, 2010 were initially listed by ARC on Schedule A to the Contract.  In Sub-Exhibit A.1 to Schedule A, ARC identified a subset of the patents on Schedule A as "Acacia Covenanted Patents" – *i.e.*, patents that ARC did not believe Microsoft infringed.  Under the Contract, all other patents owned or controlled by ARC are defined as "Acacia Licensed Patents" – *i.e.*, patents that ARC believed Microsoft infringed.

16.     The Contract required ARC periodically to provide Microsoft with updated versions of Schedule A, including any amendments to Sub-Exhibit A.1, the list of "Acacia Covenanted Patents."  *See* Contract § A1.3 (defining "Acacia Covenanted Patents" as "the

Acacia Patents listed in Sub-Exhibit A.1 as may be amended under the terms of this License and Covenant Addendum ….").

17.     In 2011, 2012, and 2013, ARC provided updates concerning later-acquired patents as specified by the Contract.  All three updates consisted of amended versions of Schedule A (the all "Acacia Patents" list) and Sub-Exhibit A.1 (the "Acacia Covenanted Patents" list), pursuant to the update provisions of the Contract.  In fact, ARC has acknowledged it was "required" by the Contract to provide these periodic updates of both Schedule A and Sub-Exhibit A.1.

18.     Microsoft had an option to extend the protections under the Contract as to any patents acquired by ARC or its subsidiaries after September 30, 2010 through ███████ ██████ for an additional fee.  The updates ARC was to provide under the Contract (which should have indicated which later-acquired patents ARC believed Microsoft was using) would have given Microsoft the ability to evaluate meaningfully whether to exercise that option.

### ARC's Bad Faith Actions Denied Microsoft The Benefits of the Contract

19.     Even before signing the Contract with Microsoft on September 30, 2010, ARC took steps to deprive Microsoft of the value of the protections Microsoft paid for under the Contract.  ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ █████████████████████████████████

20.     After completing due diligence, ARC decided to acquire patent license rights from ████████ Without informing Microsoft, however, ARC and ████████ agreed to delay ARC's

acquisition of the patent rights until after September 30, 2010, the effective-date of ARC's agreement with Microsoft, in order to avoid having the ███ patent listed as one of the patents on which ARC and its affiliates could never sue. ████████████████████████████████ ████████████████████████████████████████ ████████████████████

21.    By delaying the formal acquisition of the ███ patent until after September 30, 2010, ARC effectively avoided listing the ███ patent as an existing patent for which Microsoft received a license or covenant-not-to-sue immunizing Microsoft from suit for the full lifetime of the ███ patent. Instead, ARC listed ███ as a later-acquired patent as to which Microsoft was immune from suit only through September 30, 2013.

22.    Moreover, in direct contravention of its obligations under the Contract, ARC classified the ███ patent on an "update" as an "Acacia Covenanted Patent," *i.e.*, a patent that ARC did not believe Microsoft infringed, but an ARC subsidiary later filed a lawsuit asserting that Microsoft infringed the ███ patent.

23.    ARC later had its subsidiary abandon this meritless and abusive lawsuit involving the ███ patent, but not until after Microsoft had incurred substantial legal fees and expenses.

24.    Indeed, each of the updates that Acacia provided (in 2011, 2012, and 2013) included amended versions of Schedule A and Sub-Exhibit A.1, which indicated that *all* of the patents ARC had acquired were "Acacia Covenanted Patents" – *i.e.*, patents ARC did *not* believe that Microsoft infringed. Nevertheless, ARC has directed its subsidiaries to file multiple lawsuits based on the very later-acquired patents that it previously represented Microsoft was not infringing.

25.    While Microsoft and ARC were negotiating the Contract, ARC confirmed in writing that the "Acacia Covenanted Patents" category comprised patents that Microsoft did not infringe.  Notably, ARC further told Microsoft that ARC had a fiduciary duty to the third parties from whom it acquired patent rights to identify correctly those patents Microsoft used (*i.e.*, "Acacia Licensed Patents).  Specifically, ARC explained, if ARC granted Microsoft a license to use a particular patent, ARC would have to share royalties received from Microsoft with the third party from whom ARC acquired the patent.

26.    Nevertheless, just before September 30, 2013, while ARC and Microsoft were negotiating over the scope of the protections Microsoft would receive going forward, ARC suddenly contended that Microsoft was infringing multiple ARC patents that ARC had previously listed as "Acacia Covenanted Patents" (non-infringing) in its periodic updates.

27.    Compounding its misconduct, ARC initially claimed in this litigation that it only "formed the belief" that Microsoft infringed 31 patents acquired between October 1, 2010 and September 30, 2013 during the final 35 days of that period.  That claim contradicted ARC's prior representation to Microsoft that it carefully vetted newly-acquired patents as part of its fiduciary duties.  Then, Microsoft discovered that several third parties had specifically told ARC that they believed Microsoft was infringing those patents before ARC even acquired them.  Now, in yet another about-face, ARC says it formed beliefs concerning Microsoft's infringement of many of those patents before that 35-day period.

28.    Thus, as to each of the later-acquired patents ARC now contends Microsoft infringes, ARC (a) concealed its belief that Microsoft was infringing these patents from Microsoft, in violation of the Contract, (b) listed these patents as "Acacia Covenanted Patents" in bad faith, without having undertaken the promised investigation into whether Microsoft infringed

the patents, or (c) having previously determined that Microsoft did not infringe the patents in question, nonetheless asserted multiple bad faith infringement claims just prior to September 30, 2013 in order to force Microsoft to make additional payments.  In fact, ARC now concedes ███

████████████████████████████████████████████████████████████

████████████████████████████████

29.     In any event, the sheer number of frivolous claims asserted by ARC and its shell affiliates immediately prior to September 30, 2013, makes clear that ARC is willing to allege patent infringement in the absence of a good faith belief in the truth of its allegations and regardless of its obligation to conduct a reasonable investigation into the circumstances of its claims, and indeed an ARC affiliate has previously been sanctioned for this very kind of misconduct.

**ARC's Abusive Litigation Campaign**

30.     On October 1, 2013, seven different ARC LLCs (sometimes referred to collectively as "ARC"), filed seven patent infringement lawsuits against Microsoft, through six different law firms, in four different courthouses, in three different states, asserting eighteen patents, thereby multiplying the burden and expense on Microsoft.  As just one example, three of the actions filed on October 1, 2013 allege infringement by Microsoft's Surface tablet, but ARC did not combine even those cases into a single lawsuit.

31.     The actions filed by ARC LLCs on October 1, 2013 are:

*Cellular Communications Equipment v. Microsoft Corporation*, No. 6:13-cv-00738-LED (E.D. Tex., Tyler);

*Computer Software Protection LLC v. Microsoft Corporation*, No. 1:13-cv-01638-SLR (D. Del.).

*Data Engine Technologies LLC v. Microsoft Corporation*, No. 6:13-cv-00735-KNM (E.D. Tex., Tyler);

*Innovative Display Technologies LLC v. Microsoft Corporation*, No. 2:13-cv-00783-JRG (E.D. Tex., Marshall);

*Intercarrier Communications LLC v. Microsoft Corporation, Skype Inc, and GroupMe Inc.*, No. 1:13-cv-01639-GMS (D. Del.);

*Optimum Content Protection LLC v. Microsoft Corporation*, No. 6:13-cv-00741-KNM (E.D. Tex., Tyler); and

*Video Streaming Solutions LLC v. Microsoft Corporation*, No. 1:13-cv-07031 (N.D. Ill.).

32.     The actions filed by ARC LLCs on October 1, 2013 all asserted patents covered by the Contract, including seventeen patents that ARC, in its annual updates, had classified as "Acacia Covenanted Patents" – that is, patents Microsoft did *not* infringe.  In further violation of the Contract, the eighteenth patent had never been disclosed in any update as Covenanted or Licensed or even owned by ARC at all.

33.     ARC's documents show that the infringement claims advanced on October 1, 2013, moreover, are in many cases different than the claims in the charts ARC prepared for Microsoft just prior to that date.  In four of the suits, ARC asserted eight patents that were not the subject of any of the multiple claim charts prepared for Microsoft.  In one suit, ARC asserted four patents from a particular portfolio that were not the subject of claim charts belatedly provided to Microsoft, nor were they ever even identified to Microsoft as potentially relevant.

Instead, ARC had baselessly identified six *different* patents from that portfolio as relevant to Microsoft. As further alleged in Count I, Breach of Contract, below, the actions filed by ARC LLCs on October 1, 2013 also include allegations and seek relief prohibited by the Contract and covered by its covenants not to sue.

34. Furthermore, ARC knew at the time it filed the *Data Engine Technologies LLC* action that Microsoft holds a license, covering all of the patents asserted in that case, granted to Microsoft by a prior owner of those patents. ARC was aware of the license from the prior owner to Microsoft, and knew how to determine which specific patents were licensed to Microsoft. That license bars ARC's claims, so ARC knew they were baseless. Despite both its prior knowledge of the license and additional notification from Microsoft in November 2013, ARC did not abandon this case until January 16, 2014, after Microsoft incurred significant expense defending itself in that case.

35. Similarly, ARC knew at the time it filed the *Innovative Display Technologies LLC* action that its claims in that case also are barred by a license and thus were meritless. The accused LCD displays in Surface, the Microsoft product at issue in that action, are manufactured by Samsung Display Co., Ltd., and are subject to a license agreement with a prior title holder of the patents. ARC knew when it filed its claim against Microsoft that the Surface LCD displays are manufactured by Samsung. ARC also knew that the Samsung license agreement barred ARC from accusing Samsung products of infringement. Despite its prior knowledge of the license, its prior knowledge that the Surface display is manufactured by Samsung, and additional notification from Microsoft of both facts in November 2013, ARC did not abandon this case until October 9, 2014, after Microsoft incurred significant expense defending itself in that case for more than a year.

36.     Similarly, on information and belief, ARC knew at the time it filed the *Video Streaming Solutions, LLC* action that Microsoft could not possibly face any potential liability in that case either. On September 5, 2013, during the term of protection for later-acquired patents in the Contract, Microsoft completed the sale of the segment of its business that develops and markets the product ("MediaRoom") accused of infringement in that case. Microsoft cannot be liable for infringement by a business it no longer owns. The sale of the MediaRoom business was publicized and well-known, and ARC has admitted ███████████████████████ ████████████████████████ In addition, Microsoft notified ARC about this sale in November 2013. Yet ARC did not abandon this case until June 30, 2014, after Microsoft had incurred significant expense defending itself.

37.     On May 1, 2014, ARC and Computer Software Protection LLC voluntarily dismissed the *Computer Software Protection LLC* case without explanation, after Microsoft was forced to devote substantial resources to the defense of that case.

38.     In addition, on March 6, 2014, ARC caused another of the ARC LLCs, Internet Communications Solutions, to file an eighth action against Microsoft: *Internet Communications Solutions v. Microsoft Corporation, et al.,* No. 2:14-cv-00189 (E.D. Tex. Marshall). Despite the fact that the asserted patent in the *Internet Communications Solutions LLC* case was a pending application prior to September 30, 2013, and that the Contract required disclosure of both later-acquired patents and patent applications, ARC failed to disclose this application to Microsoft as required by Section A6.7 of the Contract. Specifically, although in a December 2012 update, ARC notified Microsoft of two other patents it had acquired from Patent Monetization Associates, L.P., it failed to provide Microsoft with notice of the application that led to the

acquisition of the particular patent now relied on by ARC's subsidiary even though that patent was acquired from Patent Monetization Associations, L.P. at the same time.

39.     Further, with respect to the patent asserted in the *Internet Communications Solutions LLC* action, ARC also breached the Contract by failing to notify Microsoft of the relevance of the pending patent application that Microsoft was allegedly infringing, especially since that application was a division of, and shares the same title as, the two related patents that ARC advised Microsoft that it *was not* infringing.

40.     ARC's bad faith conduct deprived Microsoft of the full value of the Contract and otherwise harmed Microsoft by forcing it to incur legal fees and expenses to defend against meritless claims.

41.     Even if the eight actions filed by ARC LLCs against Microsoft (collectively, the "ARC Actions") did not assert claims that ARC knew to be barred by the Contract or otherwise (which they did), ARC could have filed one lawsuit against Microsoft on all the patents ARC supposedly believed Microsoft infringed.  Likewise, ARC could easily have combined all patent claims regarding a single product in a single court; it purposely did not.

42.     ARC, ARG LLC, and the plaintiffs in the ARC Actions operate as a single business enterprise.  ARC directly or indirectly owns and/or controls each plaintiff in the ARC Actions, making them "Affiliates" under the Contracts.  No plaintiff in the ARC Actions has an independent manager, but rather is governed solely by ARG LLC, and in turn the sole member of ARG LLC is ARC.  All operational decisions of the ARC subsidiaries are made by ARC, and ARC has such control over the ARC subsidiaries that each ARC subsidiary is an alter ego of ARC.  Furthermore, upon information and belief, the ARC subsidiaries are not adequately capitalized.

43. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████

44.     Each plaintiff in the ARC Actions is acting as ARC's agent, and ARC exercises complete domination over them, particularly as to the wrongs against and injuries to Microsoft alleged in this Complaint. ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████ ARC has attempted to use and continues to attempt to use its subsidiaries as a means of evading its existing legal obligations to Microsoft under the Contract.

**Jurisdiction and Venue**

45.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because this is an action between citizens of different states and because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

46.     This Court also has jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 2201 *et seq.*

47.     Venue is proper in this district under 28 U.S.C. § 1391(a), (b)(1) and (c)(2).

48.     Under the Contract, the parties to this action have agreed and consented to exclusive jurisdiction and venue in this district.  (*E.g.*, Option Agreement, § 4.10.)  The parties also have agreed that the validity, construction, and performance of the Contract is to be governed first by the federal laws of the United States and second by the laws of New York. (*Id.*)

## COUNT I:
## BREACH OF CONTRACT

49.     Microsoft incorporates into this paragraph and re-alleges paragraphs 1–48 above.

50.     The Option Agreement and License and Covenant Addendum is a contract between Microsoft and ARC.  Microsoft has fully performed all of its obligations under the Contract, and in particular has paid a substantial fee to ARC.

51.     ARC has breached the Contract, including its covenants not to sue, by commencing, prosecuting, participating in, causing, assisting, encouraging, advising and/or permitting the filing of the ARC Actions because all of the ARC Actions assert patents covered by the Contract and, with respect to those patents, the ARC Actions:

    a)  Alleged infringement by Microsoft prior to October 1, 2013, when in fact the Contract gave Microsoft a release, license, and covenant not to sue as to all patents on which ARC has sued Microsoft;

    b)  Alleged the absence of a Microsoft license prior to October 1, 2013, when in fact Microsoft was licensed under the Contract;

c) Sought damages from Microsoft for sales and activities during the September 30, 2010 through September 30, 2013 period despite the licenses and covenants not to sue under the Contract; and/or

d) Sought damages from Microsoft for sales and activities occurring prior to September 30, 2010 that were released under the Contract.

e) Alleged willful infringement by Microsoft when such allegations are barred by the Contract.

52.     ARC has since amended its complaints or taken other steps to narrow its claims against Microsoft, and in some cases has dismissed its claims, thereby conceding that its original claims were asserted in breach of the Contract and without basis.

53.     Furthermore, as explained above, under the Contract, and throughout its term, ARC was required to categorize for Microsoft in a written update which patents ARC believed Microsoft was infringing.  In the three annual updates, ARC categorized *all* of its later-acquired patents as "Acacia Covenanted Patents," thereby admitting that Microsoft was not infringing any patents that ARC or its Affiliates acquired after September 30, 2010.

54.     If ARC in fact believed that Microsoft was infringing any of these patents, ARC acted in bad faith and deprived of Microsoft of its right under the Contract to notice of which patents ARC believed Microsoft infringed so that Microsoft would have the opportunity to take appropriate action, if any.  In all events, ARC's updates are binding admissions that Microsoft does not infringe those patents.

55.     In addition to the breaches set forth above, ARC also has breached the Contract by:

a) Failing to update Microsoft as required under the Contract with accurate lists of patents owned or controlled by ARC or its subsidiaries;

b) Failing timely to identify under the Contract which patents acquired after September 30, 2010, if any, ARC believed that Microsoft infringed; and/or

c) Asserting infringement by Microsoft of patents that ARC previously identified to Microsoft in updates under the Contract as patents that Microsoft did *not* infringe.

56.    ARC has further breached the Contract by violating its prohibitions against using the existence, terms, and/or disclosures of the Contract, and/or discussions between Microsoft and ARC relating to the Contract, and/or Microsoft's exercise of the option under the Contract, to Microsoft's prejudice, including as a basis for alleging in the ARC Actions actual or constructive notice of the asserted patents or of Microsoft's alleged infringement and/or to support a claim of damages, willful infringement, or inducement.

57.    ARC's breaches of the Contract have damaged Microsoft.  Microsoft has been deprived of a significant part of the benefit of the bargain under the Contract.  In addition, Microsoft has been and is being damaged by the cost and expense of defending against the ARC Actions.

58.    The parties have agreed that the Contract "may be used as a basis of an injunction against[ ] any action at law, proceeding in equity, or any other judicial, quasi-judicial or administrative charge or proceeding relating to the Acacia Patents." (*E.g.*, License and Covenant Addendum, § A2.8.)  Harm that Microsoft has suffered and will continue to suffer unless and until ARC is enjoined has been and will be irreparable and not fully compensable in money, leaving Microsoft with no adequate remedy at law.  ARC's failure under the Contract to identify

fully and completely to Microsoft which of the patents that ARC acquired after September 30, 2010, ARC believed that Microsoft infringed, if any, is one such ongoing harm that is not fully compensable in money damages. ARC correspondingly should be enjoined from asserting against Microsoft any patent that it acquired after September 30, 2010 and failed to identify as infringed.

## COUNT II:
### BREACH OF CONTRACT (Implied Covenant Of Good Faith And Fair Dealing)

59.     Microsoft incorporates into this paragraph and re-alleges paragraphs 1–58 above.

60.     The Option Agreement and License and Covenant Addendum is a contract between Microsoft and ARC. Microsoft has fully performed all of its obligations under the Contract, and in particular has paid a substantial fee to ARC.

61.     Under New York law, all contracts include an implied covenant of good faith and fair dealing encompassing a pledge than neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. ARC therefore owed such a duty to Microsoft.

62.     ARC breached the covenant of good faith and fair dealing by taking commercially unreasonable actions, in bad faith, immediately before and during the performance of the Contract that effectively deprived Microsoft of the benefit of the parties' agreement.

63.     Among other things, ARC intentionally delayed the acquisition of patent rights it had decided to acquire so that they would not be subject to a full life-of-patent immunity and could later be asserted against Microsoft. Shortly after the Contract was signed, ARC attempted to cover up its bad faith by ███████████████████████████████████████ ████████████████████████

64.     Furthermore, although an intended benefit to Microsoft of the Contract's update provision was to provide Microsoft with meaningful notice of the patents ARC was acquiring that were relevant to Microsoft, ARC frustrated that purpose and withheld that contractual benefit from Microsoft by intentionally classifying all of its later-acquired patents as "Acacia Covenanted Patents" that Microsoft did not infringe, regardless of ARC's actual beliefs of Microsoft's infringement or non-infringement.  Notwithstanding that classification in a series of three annual updates, ARC bombarded Microsoft just prior to September 30, 2013 with claims that Microsoft was supposedly infringing several of those same patents.

65.     As alleged above, ARC first claimed in this litigation that it only formed a belief that Microsoft was infringing many of its patents just prior to September 30, 2013.  In fact, as ARC belatedly revealed, ARC had discussions with third parties about Microsoft's potential infringement of the patents.  ARC now says █████████████████████████████
████████████████████████

66.     ARC at best concealed its belief that Microsoft was infringing these newly acquired patents from Microsoft, in violation of the Contract, or listed these patents as "Acacia Covenanted Patents" in bad faith, without having undertaken the promised investigation into whether Microsoft infringed the patents.  Alternatively, having previously represented that Microsoft did not infringe the patents in question, ARC nonetheless asserted multiple frivolous infringement claims just prior to September 30, 2013, in order to force Microsoft to pay a higher fee than it otherwise would have paid for an extension of the contractual protections for newly acquired patents.

67.     ARC's conduct in violation of the covenant of good faith and fair dealing has harmed Microsoft.  Microsoft has been deprived of the benefit of the bargain under the Contract.

In addition, Microsoft has been and is being damaged by the cost and expense of defending against the abusive ARC Actions.

**COUNT III:**
**ABUSE OF PROCESS**

68.     Microsoft incorporates into this paragraph and re-alleges paragraphs 1–67 above.

69.     ARC's purpose underlying the ARC Actions and the legal processes those lawsuits have set in motion, including early and extensive disclosures and discovery, is to wrongfully try to coerce Microsoft to make additional payments to ARC for protection from ARC's patents—a payment motivated by Microsoft's desire to be free from the burden and expense of defending against the bad faith ARC Actions brought by a notorious NPE that has been sanctioned in connection with its litigation tactics.

70.     As alleged above, ARC knew that many of the claims and allegations in the ARC Actions lack any merit, because they are covered by the Contract, prohibited by the Contract, and/or subject to licenses provided by prior owners of the asserted patents.  Despite that knowledge, ARC orchestrated the filing of multiple lawsuits that include these baseless claims and allegations in order to maximize the burden and expense of the ARC Actions on Microsoft.  By doing so, ARC also violated its obligation to make a reasonable and good faith inquiry into its allegations of patent infringement.

71.     Four of the seven meritless actions commenced against Microsoft on October 1, 2013, including the *Data Engine Technologies LLC*, *Innovative Display Technologies LLC*, *Video Streaming Solutions LLC*, and *Computer Software Protection LLC* actions, have already been voluntarily dismissed by ARC.  As ARC intended, these meritless lawsuits forced Microsoft to incur substantial legal fees and expenses to defend against ARC's frivolous patent

19

infringement claims prior to their dismissal. Microsoft continues to incur legal fees and expenses in the remaining suits, as well as in the *Internet Communications Solutions LLC* action, the eighth suit filed on March 6, 2014.

72.     Through a number of the ARC Actions, ARC also seeks injunctive relief against Microsoft even though ARC knows that neither it nor its specifically-named ARC Affiliate plaintiff has any plausible claim to any injunction even if infringement were to be proven and validity of the asserted patent(s) upheld. ARC's business is to license its patents, and it sells no products, let alone any products that compete with Microsoft, thus any damage to ARC or its affiliates necessarily is compensable fully in money only and no injunction is available under applicable law. Again, ARC has injected these baseless claims into the ARC Actions to maximize the burden and expense of those actions on Microsoft.

73.     Similarly, in a number of the ARC Actions, ARC injected allegations of willful infringement, even though ARC knew that it had no plausible basis for such allegations. Under the Contract, Microsoft has no possible liability to ARC or its affiliates for any sales prior to the filing of the ARC Actions, so it is not possible for "willful" infringement to have taken place before those actions were filed.

74.     Even if the ARC Actions did not assert claims that ARC knew to be barred (which they did), ARC could have filed one lawsuit against Microsoft on all the patents ARC believed Microsoft infringed. Instead, ARC has filed and litigated eight patent lawsuits, in four different cities, in three different states, multiplying the burden and expense on Microsoft. Indeed, three of the ARC Actions allege infringement by Microsoft's Surface tablet, but ARC did not combine even those cases into a single lawsuit.

75.     ARC's abuses of process have damaged Microsoft.  Microsoft has been and is being damaged by the cost and expense to defend against the abusive ARC Actions.

76.     Harm that Microsoft has suffered and will continue to suffer unless and until ARC is enjoined has been and will be irreparable and not fully compensable in money, leaving Microsoft with no adequate remedy at law.

## COUNT IV:
## DECLARATION OF RIGHTS

77.     Microsoft incorporates into this paragraph and re-alleges paragraphs 1–76 above.

78.     There is a dispute between the parties about their rights and obligations under the Contract, including ARC's contractual obligation to defend Microsoft and hold Microsoft harmless against the ARC Actions.

79.     The dispute is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

80.     Microsoft is entitled to a declaratory judgment that:

a)  Microsoft and/or its affiliates cannot be held liable in the ARC Actions for any alleged infringement before October 1, 2013;

b)  Neither ARC nor its subsidiaries has any right to sue Microsoft and/or its affiliates in the ARC Actions for alleged willful infringement;

c)  Neither ARC nor its subsidiaries has any right to seek in the ARC Actions an injunction against Microsoft and/or its affiliates;

d)  ARC is obligated to identify to Microsoft all of the patents it owned or controlled as of September 30, 2013 that ARC believes that Microsoft was infringing as of that date;

e) ARC is not permitted to assert any patent that it owned or controlled prior to October 1, 2013 that it had not identified to Microsoft in updates under the Contract as a patent that Microsoft was infringing; and

f) ARC is obligated to indemnify and hold harmless Microsoft and its affiliates against the ARC Actions.

## RELIEF REQUESTED

Based on ARC's breach of the Contract and its other unlawful and unfair acts, Microsoft requests that the Court order relief for Microsoft and against ARC as follows:

A. Judgment in favor of Microsoft on all claims;

B. Monetary damages according to proof, including sufficient to make Microsoft whole for the lost benefit of its bargain and for the cost of defending the ARC Actions;

C. Punitive damages;

D. An injunction precluding ARC and any related or controlled entity or person from commencing, assisting in any way, prosecuting or causing, permitting or advising to be commenced or prosecuted against Microsoft and its affiliates, any action or proceeding based upon or arising out of any alleged infringement occurring prior to October 1, 2013 of any patent owned or controlled by ARC;

E. An injunction precluding ARC and any related or controlled entity of person from commencing, assisting in any way, prosecuting or causing, permitting or advising to be commenced or prosecuted against Microsoft and its affiliates, any action or proceeding based upon any patent owned or controlled by ARC prior to October 1, 2013 that was not identified to Microsoft in updates under the Contract as a patent that Microsoft infringed;

F. An injunction precluding ARC and any related or controlled entity or person from attempting to litigate any provisions of the Contract in any forum other than this Court;

G. A declaration of rights under the Contract and corresponding injunction precluding ARC and any related or controlled entity or person from advancing positions in any action inconsistent with ARC's obligations under the Contract;

H. A declaration of rights under the Contract and corresponding order of specific performance requiring ARC to identify fully and completely any patents acquired by ARC during the license term that ARC believes that Microsoft or its affiliates infringes;

I. A declaration that ARC has breached the Contract;

J.  A declaration that ARC is obligated to indemnify and hold harmless Microsoft and its affiliates against the ARC Actions;

K.  An award of costs to Microsoft;

L.  Pre-judgment interest; and

M.  Such other legal and equitable relief as the Court may deem Microsoft to be entitled to receive.

Dated:  December 4, 2014

Respectfully submitted,

SIDLEY AUSTIN LLP

DECHERT LLP

By:

By:

Richard A. Cederoth
Ellen S. Robbins
Nathaniel C. Love
One South Dearborn
Chicago, Illinois  60302
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
rcederoth@sidley.com
erobbins@sidley.com
nlove@sidley.com

Andrew J. Levander
Matthew L. Mazur
1095 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 698-3500
Facsimile:  (212) 839-5599
andrew.levander@dechert.com
matthew.mazur@dechert.com

Frederick G. Herold (*pro hac vice*)
2440 W. El Camino Real, Suite 700
Mountain View, California  94040
Telephone:  (650) 813-4930
Facsimile:  (650) 813-4848
frederick.herold@dechert.com

[UNDER SEAL]

# EXHIBIT 1